CONTINENTAL BANK & TRUST COMPANY OF NEW YORK, as Successor Trustee under a Mortgage Made by W. A. R. REALTY CORPORATION, Respondent, v. W. A. R. REALTY CORPORATION et al., Defendants.

LLOYD E. LUBETKIN, Appellant; MIDTOWN ENTERPRISES, INC., et al., Respondents.

CONTINENTAL BANK & TRUST COMPANY OF NEW YORK, as Successor Trustee under a Mortgage Made by W. A. R. REALTY CORPORATION, Plaintiff, v. W. A. R. REALTY CORPORATION et al., Defendants.

JACK S. STRAUSS, Individually, and on Behalf of All Other Stockholders Similarly Situated, Appellant; MIDTOWN ENTERPRISES, INC., Respondent.

First Department, April 5, 1946.

578

*Paul O'Dwyer* of counsel (*O'Dwyer & Bernstien,* attorneys), for appellants.

*Abraham J. Halprin* of counsel (*Sidney R. Rossiter* with him on the brief), for Midtown Enterprises, Inc., respondent.

*Martin Lippman* of counsel (*McLaughlin & Stern,* attorneys), for A. S. Kirkeby, Inc., respondent.

DORE, J. The main issue on the merits in these appeals is the same, whether under section 20 of the Stock Corporation Law notice to stockholders and affirmative consent of two thirds thereof were mandatory on the sale of a hotel, the last and chief asset of Midtown Enterprises Corporation, formed pursuant to a plan of reorganization under the Burchill Act. (Real Property Law, §§ 119–123.)

We have already affirmed an order denying to a stockholder of the corporation an injunction against the sale and dismissing the stockholder's complaint. (*Strauss* v. *Midtown Enterprises,* 270 App. Div. 837.) On that appeal the court unanimously considered the complaint was properly dismissed as an attempted collateral attack by injunction upon the court's order.

Of the remaining two appeals, the first to be considered is by one Lubetkin, a director and bondholder, but not a stockholder. He appeals directly from the order approving the sale. Although Lubetkin is not a stockholder, we think as a bondholder who objected to the sale, he is a party aggrieved and may raise on the merits any issue of claimed illegality in the sale even though the alleged illegality relates to lack of notice to and consent of stockholders. In this appeal, therefore, we consider the question presented on the merits.

The real issue on all the facts disclosed, is not lack of notice to stockholders but the claimed necessity of stockholders' two-thirds affirmative consent under section 20 of the Stock Corporation Law. Stock of the corporation, Midtown Enterprises, Inc., had originally been issued only in connection with bonds

and it is only in the small number of cases in which bonds were redeemed that there is any stock ownership existing apart from ownership of bonds. Only 3,065 shares out of 64,825 have become detached from bonds, and thus 95% of the stockholders received actual notice of the sale by receiving the notice concededly directed to them as bondholders. Neither in this appeal nor in any of the appeals is any issue raised by a stockholder who did not receive notice. Strauss, the stockholder on the other appeals, concededly had notice. Accordingly, the real issue presented is the question of the necessity of affirmative consent by two thirds of the stockholders pursuant to section 20 of the Stock Corporation Law.

We restrict our decision to the facts presented in connection with this sale. No fraud, bad faith, collusion or personal profit is claimed. The price is $1,000,000 more than the price refused about a year before. After open and active bidding, the highest offer of $2,335,000, made by a company that operates a number of large hotels, was accepted and approved by the board of directors of the corporation and by the court. The sale will realize for the bondholders approximately 97 cents on the dollar basis of the original bonds, or 137 cents on the dollar for the new bonds. On the record it cannot be said the action of the board of directors was arbitrary or unreasonable (*Blaustein* v. *Pan American Petroleum & Transport Co.*, 293 N. Y. 281, 303–304).

On all the facts and circumstances here presented, we think Special Term correctly determined that section 20 of the Stock Corporation Law was not applicable. This is not the usual business corporation referred to in *Matter of Timmis* (200 N. Y. 177). Ordinarily, of course, in reason and justice as well as statutory law no business corporation should be permitted to sell all its assets on a vote of its directors and consent of bondholders without notice to and consent by the stockholders, the owners of the corporation and its assets. But Midtown Enterprises Corporation is not an ordinary hotel business corporation. It was not organized by persons buying stock therein for the purpose of conducting a hotel business. It was organized under the Burchill Act to protect bondholders after the equity of the original owners of the property had been wiped out. Stock in Midtown Enterprises was issued only as an incident to bonds. The company was incorporated for the express purpose of holding the assets for the protection of the bondholders until they could be liquidated. Originally the corporation had five properties but has disposed of all but the hotel property. The

order and plan of reorganization, the certificate of incorpora
tion, the by-laws of Midtown Enterprises, and the mortgage
indenture — all indicate that the purpose of forming the cor-
poration and issuing stock therein to the bondholders was to
carry out the liquidation for which the corporation was pri-
marily organized, after which its certificate provides that the
corporation be dissolved. The plan of reorganization does not
provide for notice to stockholders; the plan requires that notice
be given to the bondholders and the trustee. Such notice was
given as required. Less than 33⅓% in principal of bonds out-
standing voted against the proposed sale.

Under section 122 of the Real Property Law (Burchill Act)
" the reorganization plan shall be deemed binding on all holders
of bonds or certificates of shares or parts unless within twenty
days after the approval of the plan one-third in principal sum
of such holders shall file with the court duly acknowledged dis-
sents therefrom   *   *   *." As such one-third dissents were not
filed, the plan of reorganization became binding on all the bond-
holders and the provisions of the plan were binding on the new
corporation and those to whom its stocks and bonds were issued
pursuant to the plan. Section 122 became effective on May 3,
1933 (L. 1933, ch. 729), long after section 20 had been enacted;
it relates specifically to a corporation such as that herein
involved and is controlling.

*Matter of Miglietta (2660 Broadway Corp.)* (287 N. Y. 246)
involved the sale by a salvage corporation authorized to
liquidate property acquired by a fiduciary on the foreclosure
of mortgaged property where the mortgage had been divided
into shares or participations. The issue determined was
that a dissenting share owner of such corporation could not
demand appraisal of his stock under section 20 of the Stock
Corporation Law, and payment for his stock according to
such appraisal when the corporation sold the property. While
no question of notice to or consent of stockholders was
involved, the court held that the sale to carry out the liquida-
tion was the only purpose of the corporation's existence and
was, therefore, a sale in the regular course of business, and
that a dissenting stockholder could not obtain an appraisal of
his stock under section 20. That section provides in the same
paragraph for consent to the sale by two thirds of the share-
holders and also for an appraisal for dissenting shareholders.
It would seem that section 20 should either apply in its entirety
or not at all. The Court of Appeals in the *Miglietta* case has
held that its appraisal provisions have no application to a
salvage corporation. Implicit in that decision is, we think, the

inference that the two-thirds consent provisions are also inapplicable to such corporations. Here, as there, the primary purpose of the corporation was the liquidation of the assets when they could be sold. The plan is a contract whose terms are binding on the bondholders and stockholders who received stock only in connection with the receipt of the bonds. (*Matter of Duer,* 270 N. Y. 343, 349.)

On the third appeal the issue is whether the court could strike out *nunc pro tunc* a provision in the original order to show cause that notice be given also to the stockholders. In view of our decision on the main appeal, such notice was unnecessary and surplusage and accordingly curable *nunc pro tunc* under sections 105–109-a of the Civil Practice Act.

The orders appealed from should in all respects be affirmed, with $20 costs and disbursements of each appeal to respondents.

CALLAHAN, J. (dissenting). I dissent from the affirmance of the orders involved in these appeals upon two grounds: (1) that consents of two thirds of the stockholders of Midtown Enterprises, Inc., to the present sale were required under section 20 of the Stock Corporation Law; and (2) that even if said consents were not required, then notice to all stockholders of application to the court for approval of said sale was requisite upon general equitable principles.

I consider consents of stockholders necessary in this case, because I deem that the present sale is not one in the course of the ordinary business of Midtown Enterprises, Inc. This corporation, by its certificate, was granted power to hold, manage, and sell real property, and to conduct a hotel business. The sale is that of the real property housing the hotel, which is the principal and final asset of the corporation. Such a sale would terminate all corporation activities, and under the applicable statutes, it would effect the dissolution of Midtown Enterprises, Inc. I deem that a sale accomplishing these results was not one in the course of the ordinary business of the corporation, even though liquidation was one of the objects for which the corporation was utilized, and that consents of stockholders should be obtained on such a sale.

The requirement of section 20 of the Stock Corporation Law for consents would seem to be applicable, unless it was intended by the Burchill Act (Real Property Law, §§ 119–123) to exempt from the provisions of section 20 corporations utilized to hold properties in reorganization. If such was the legislative intent it would have to be inferred from the general purposes of the Burchill Act and from the conclusion that

a corporation utilized to carry out those purposes was not to be an ordinary business corporation, but a mere corporate agency devised to aid the court in the judicial process of reorganization to which the general provisions of law applicable to business corporations were not to apply. I find nothing is set forth in sections 121 and 122 of the Real Property Law creating any such broad exemption. As one- reads these statutes, they would indicate an intention to have a business corporation referred to in the act, made subject to such general provisions of law. It seems to me that it would amount to judicial legislation to construe these statutes otherwise.

Section 121 provides that an existing or newly-formed business corporation may be utilized to carry out a plan of reorganization. The provision authorizing the use of an existing corporation would seem to indicate that the general statutes applicable to business corporations were to apply to the corporations referred to in section 121. The section further states that the corporation so utilized shall be subject to the " restriction " found in section 111 of the Decedent Estate Law. Subdivision 4 of section 111 of the Decedent Estate Law provides that the general laws relating to the consents of stockholders are applicable to the salvage corporations referred to therein. This provision in section 111 shows, at least, that the procuring of consents of stockholders is a requirement that is not foreign to corporations used to aid the liquidation of distressed properties. The word " restriction " as used in section 121 may have been intended to refer merely to the limitation found in section 111 with respect to investments, or the requirement for dissolution found therein, or to both of these limitations. I do not mean to infer that it incorporates by reference the provisions of section 111 as to consents.

I find nothing in section 121 indicating an intent to exempt any corporation mentioned therein from any of the provisions of law relating to business corporations generally. It seems to me that when the Legislature set forth in detail, in a separate section, particular provisions as to the powers of and restrictions upon corporations to be utilized in Burchill Act proceedings, some indication would have been given in that section if it was intended that stockholders of such a corporation were not to have the usual rights of stockholders of business corporations. Whatever indication there is in the language of the section on this question of intention would seem to me to point toward the existence of such rights.

The legislative intention generally to require consents to sales of property in Burchill Act reorganizations is further indicated

by the fact that under section 120-a of the Real Property Law, it is provided that upon a proposed sale of a mortgage representing the trust property, security holders are to be afforded an opportunity to file dissents. If consents are required as to a sale of a mortgage, why not as to real property owned in fee?

Conceivably, a plan of reorganization under the Burchill Act might provide that the original security holders receive only shares of stock in the new corporation in lieu of their former securities. Likewise, the trust property might consist of a single parcel of real estate. Under such circumstances it would be doubtful that the Legislature intended that directors of a holding corporation could propose a sale of the corporate property without notice to the real owners thereof.

The circumstances that under the present plan of reorganization the former security holders were given bonds as well as stock, and that the plan provided for notice to bondholders only, would not affect the question of statutory construction.

Section 122 of the Real Property Law provides that a reorganization plan is binding on all holders of bonds or certificates of shares, unless one third in principal of such bondholders file dissents. This provision would not permit a plan, when so adopted, to dispense with consents of stockholders if the statutes contemplated that such consents should be furnished.

The adoption of a plan of reorganization creates a contract which is binding on stockholders. (*Matter of Duer,* 270 N. Y. 343.) But under the ordinary rules of construction all applicable statutes are read into contracts, and the parties may not, by their agreement, nullify existing laws. (*City of New York* v. *Interborough R. T. Co.,* 257 N. Y. 20, 33.)

*Matter of Miglietta (2660 Broadway Corp.)* (287 N. Y. 246) is not controlling here. The only proposition that that case decided was that a nonassenting stockholder was not entitled to an appraisal of and immediate payment for his stock. In the *Miglietta* case, two thirds of the stockholders had affirmatively consented to the sale involved, in accordance with the requirements of the statutes controlling that proceeding. (See Personal Property Law, § 21; Decedent Estate Law, § 111.) The Court of Appeals determined that an appraisal and immediate payment to a nonassenting stockholder would defeat the essential object of a salvage proceeding by creating inequality as between security holders. It pointed out that when the right to an appraisal of stock was intended to be given, the Legislature invariably granted that right by express provision of law, whereas the statutes involved in the *Miglietta* case did not contain any such provision. The court found these reasons suffi-

cient to warrant a holding that no right of appraisal, under section 20, was intended to be conferred upon nonassenting stockholders in a salvage proceeding. No similar reason exists for eliminating the consents required by section 20 as to a sale of the comprehensive nature of the present one. The right to consent to or to oppose a sale would apply alike to all stockholders. A construction requiring such consents to be furnished would not defeat the equitable purposes of a reorganization proceeding. At most, the obtaining of affirmative consents from two thirds of the stockholders would impose some additional burden on those proposing a sale. But a like burden is imposed on all stock corporations having widespread stock ownership as to sales coming within section 20.

For the reasons indicated, I think that sufficient basis exists for distinguishing between the applicability of the provision for consents found in section 20, and the provision for appraisal found therein. Accordingly, I am of the opinion that it was illegal to approve this sale without the consents of stockholders of Midtown Enterprises, Inc., as provided for in section 20 of the Stock Corporation Law, and the order approving the sale should be reversed.

But, even if I am in error on this question of consents, it seems to me that, in any event, upon an application to sell the final asset of the corporation, the equitable nature of the proceedings involved requires notice to stockholders that such a step was contemplated. The stockholders who had sold their bonds retained rights as stockholders. These rights would be vitally affected by the price and terms obtained upon a sale of the corporate assets, and the right to be heard was a substantial one. It would be inequitable that these rights should be finally disposed of without some opportunity to the stockholders to be heard. Therefore, even if the sale could be legally effected without affirmative consents of two thirds of the stockholders, all stockholders should, nevertheless, have the right to present their views to the court as to the wisdom of the proposed sale. The orders appealed from should be reversed.

I vote to reverse the order approving the sale, and the order amending the order to show cause, and deny the motions for such relief.

TOWNLEY and PECK, JJ., concur with DORE, J.; CALLAHAN, J., dissents in an opinion in which MARTIN, P. J.. concurs.

In each action: Order affirmed, with $20 costs and disbursements. [See *post,* p. 921.]