Henry Clay Greenberg, J.
A minority stockholder and debenture holder of defendant Forty Wall Street Building, Inc. (hereinafter called the Corporation) moves to restrain it and defendant Webb & Knapp, Inc., the holder of two thirds of its capital stock, from taking any action to effect the sale of the property of the Corporation on the terms proposed in a certain notice of special meeting sent to stockholders. Another minority stockholder has brought on a similar application. The two motions are considered together.
Plaintiffs contend that Webb & Knapp, Inc., and its president, defendant William Zeckendorf, have devised this plan in bad faith and in their own interest with the object of acquiring the property in a tight money market, while forcing minority stockholders to relinquish their investment in the Corporation at a time when there is neither necessity nor justification for a sale of its only asset.
Since this is not the ordinary stock corporation, it is necessary to review its genesis and subsequent history.
The Corporation was organized in 1940 pursuant to a plan of reorganization under the Burchill Act (Real Property Law, §§ 119-123) to protect bondholders whose indenture trustee had instituted foreclosure proceedings after default on the mortgage. Under the plan approved by the court, this Corporation was given the deed to the property and the only persons in interest remaining were the bondholders, who were given debentures for the full amount due them with stock certificates of the par value of one cent per share attached thereto so that the two could not be separated except in case of redemption of debentures.
It was provided in the plan of reorganization and explicitly set forth in its certificate of incorporation that the Corporation was to be dissolved upon the sale of the property, i.e. to liquidate and go out of business.
The order of this court approving the proposed plan stated that ‘ ‘ exclusive jurisdiction of this cause and of all proceedings connected therewith is hereby retained ” for the purpose of such orders as the court might ‘ ‘ from time to time deem necessary or desirable ”. In the order confirming the plan as set forth in the necessary documents it was again provided that all parties in interest were given leave to apply to the court for such further instructions, directions and orders as might *320 from time to time seem necessary 1 ‘ fully to consummate and carry out ” the plan of reorganization, “ and the court hereby reserves the right to make any and all such orders ”.
The Corporation functioned and prospered. In 1953 the indenture was amended by the debenture holders and board of directors to effect a separation of debentures and stock certificates so that thenceforth they were transferable separate and apart from each other. At the same time it was agreed to increase the number of shares of stock 20 to 1. There are presently 377,740 shares and about $6,000,000 worth of debentures outstanding, about one half of the original amount having been redeemed by the Corporation under a clause making the debentures redeemable in whole or in part, at its option, on any interest payment date.
Webb & Knapp, Inc. is the owner of 251,853 shares or two thirds of the issued and outstanding stock. It began to acquire such stock only recently. In January, 1957 it invited tenders for additional shares at $32.50, but this failed to bring out sufficient stock. In the summer of 1957 it increased its offer, this time through a broker, to $39 a share and succeeded in reaching its goal of two-thirds ownership.
At the annual meeting held shortly thereafter on October 1, 1957 defendant William Zeckendorf stated that Webb & Knapp, Inc., was requesting the Corporation to offer its property for cash sale at public auction. The reasons given were that this was ‘ ‘ the propitious moment for the sale of the property ’ real estate values in Wall Street were “ at a peak ”, and the property would suffer in the future from the competition of the new buildings going up on Wall Street. He pointed out that two well-known appraisers had just then submitted reports to the Corporation valuing its property at $13,500,000 and $14,000,-000 respectively. His proposal was for a minimum upset price of $15,000,000 with Webb & Knapp, Inc., assuring such bid of not less than $15,000,000 in cash, the proceeds of which, after paying the outstanding debentures in full, would be sufficient to net $25 a share.
A notice of special meeting was accordingly sent to all stool holders, proposing an increase in the number of directors by amendment to the certificate of incorporation, to be followed by the election of such additional number (to permit Webb & Knapp, Inc. to gain a majority in the board) and the authorization to proceed with the proposed sale on the stated conditions and ‘1 any other terms and conditions which may be established by the Board.”
*321 These two actions for a permanent injunction restraining the proposed steps leading to the sale were then commenced. These motions are for a preliminary injunction pending the trial of the actions.
The plaintiffs maintain that the sale of this substantial real property for cash at public auction is unwise and detrimental to the interests of the Corporation, and particularly so at this time in view of the current tight market. They contend that the terms have been and will be so arranged as to make it almost certain that Webb & Knapp, Inc., will be the successful and possibly the only bidder.
They also state that the property is worth far in excess of $15,000,000 and annex to their papers appraisals estimating values in the neighborhood of $20,000,000. They point to the 100% occupancy of the building and, contrary to Mr. Zecken-dorf’s predictions, forecast an enhancement of values resulting from the renascence of real estate in and around Wall Street occasioned principally by the new structures being built by a number of banks, foremost among which is the Chase Manhattan Bank.
Three members of the present board named as formal defendants join in the request for an injunction restraining the proposed sale. (It may be observed that a majority [in fact five] of the present directorate of seven have stated that they do not approve the proposed sale.) These three directors suggest “ that the Court take jurisdiction of the subject matter of this controversy and prevent the sale by the majority stockholder to itself, except upon Court approval and under Court supervision, so that the rights of the debenture holders and minority stockholders may be protected, since it appears that these minority stockholders may not have the protection of section 21 of the Stock Corporation Law.” That section provides for the ascertainment and payment by means of a court proceeding of the true value of stock owned by dissenting minority stockholders who are powerless to prevent a sale or conveyance of all or substantially all the property of a stock corporation authorized by two thirds of its stockholders pursuant to section 20 of the Stock Corporation Law.
These directors charge through their attorney bad faith on the part of Webb & Knapp, Inc., in making the proposal at the present time and in the present form. They refer to various transactions from which they infer that there is a tie-in to consummate a sale mutually advantageous to Webb & Knapp, Inc., and the Chase Manhattan Bank. The bank owns 41% of the *322 land on which this building stands and also occupies space therein at a rental of $1,000,000 a year under a lease for another 15 years, the latter no longer needed in view of the removal of its main offices into its own building being erected across the street. The attorney for these directors states that according to his calculations the average cost to Webb & Knapp, Inc., of its stock acquisitions in the Corporation is $32.50 a share, which, if true, would mean that Webb & Knapp, Inc., was deliberately taking a substantial loss under its own proposal for a minimum upset price netting only $25 a share. The entire maneuver, it is charged, is for the purpose of freezing out the minority in order to permit Webb & Knapp, Inc., to acquire a valuable property cheaply and the Chase Manhattan Bank to carry out its plan of development.
In reply thereto Mr. Zeckendorf states that Webb & Knapp, Inc., is acting entirely on its own account, that its relationship with the Chase with respect to this property is “no mystery ”. In accordance with its practice for many years, it used the Chase for banking facilities, loaning from it the funds with which to purchase its holdings of stock in the Corporation as well as 32% of the fee of the underlying land. (The Corporation owns only 27% of the land, paying ground rentals for the use of this 32% portion of the fee and the remaining 41% owned by the Chase.) He states that Webb & Knapp, Inc., has been authorized by the Chase to negotiate a sale of its 41% fee interest on condition “ that the lease [of space in the building for an additional fifteen years] would be terminated without cost to the Chase.” There is no denial of the statement made concerning Webb & Knapp’s acquisition of stock at an average cost of $32.50 a share. It would appear that some element of individual advantage to Webb & Knapp, Inc., (and, presumably the Chase) inheres in the present proposal beyond the mere matter of realizing $25 a share for all stockholders.
It is fundamental, of course, that a preliminary injunction will not issue except upon a showing of sufficient facts to warrant the interposition of a court of equity in advance of the trial or hearing of the issues. Here, however, it is clear from the foregoing review of the history of this Corporation and the facts relating to the proposed sale of all its assets that, from whatever point of view or of law one regards the controversy, the sale should be enjoined pending a full exploration by a court of all the relevant facts.
It may be that the charge of bad faith merely consists of a combination of suspicious circumstances, but sufficient has been set forth and partially admitted to justify an investigation into *323 the question as to whether the proposal of Webb & Knapp, Inc., is intended for its own advantage at the expense of the Corporation and minority stockholders.
The majority stockholders of a corporation owe the utmost good faith towards all the stockholders and may not, in breach of such fiduciary obligation, use their corporate power in bad faith or for their own individual advantage at the expense of the interests of the minority (Kavanaugh v. Kavanaugh Knitting Co., 226 N. Y. 185). The court there said, at page 196: “ A court of equity will protect a minority stockholder against the acts or threatened acts of the board of directors or of the man-' aging stockholders of the corporation, which violate the fiduciary relation and are directly injurious to the stockholders.”
In Ervin v. Oregon Ry. S Nav. Co. (27 F. 625, 632) cited with approval in Kavanaugh v. Kavanaugh Knitting Co. (supra) it was noted that “ although the minority of stockholders cannot complain merely because the majority have dissolved the corporation and sold its property, they may justly complain because the majority, while occupying a fiduciary relation towards the minority, have exercised their powers in a way to buy the property for themselves, and exclude the minority from a fair participation in the fruits of the sale. ’ ’
It is true that the sale is to be at public auction, that some other group may outbid Webb & Knapp, Inc., and thus bring in a price approaching what the minority claim is a fair price. The granting of a temporary injunction is not intended as an adjudication of the issue of bad faith consisting of alleged self-dealing or special advantage, but simply and solely as a holding that sufficient has been shown to call for proof at a trial or hearing, which may be had at an early date, without prejudice to any interests involved.
Here, moreover, there is an additional reason for protecting the minority stockholders prior to the actual consummation of the sale. In the usual situation, absent a showing of bad faith, fraud or other breach of trust, minority stockholders may not be heard to complain of a sale by a corporation of all its property, because they have available an adequate remedy by way of an appraisal in which they are entitled to every item, of value that can be established (Beloff v. Consolidated Edison Co. of New York, 300 N. Y. 11; Blumenthal v. Roosevelt Hotel, 202 Misc. 988). However, there is a serious question whether the minority stockholders of this Corporation have such right in view of its original status as a Burchill Act corporation whose sole function is liquidation (see Matter of Miglietta [2660 Broadway Corp.], 287 N. Y. 246; Continental Bank & Trust Co. v. W. A. R. Realty Corp., 270 App. Div. 577, affd. 295 N. Y. 877). *324 In fact, the position taken throughout in the affidavits and briefs submitted on behalf of Webb & Knapp, Inc., is that this is a Burchill Act corporation. While urging its right as two-thirds stockholder to sell the property, it does not concede the minority stockholders the corresponding right of appraisal. Such a position is untenable, because the one may not be had without the other, as indicated in the following analysis from Eisenberg v. Central Zone Property Corp. (306 N. Y. 58, 66-67): “At common law neither the majority stockholders nor the directors could bring about a sale or cause a transfer of any portion of the property, essential for the transaction of its customary business, of a solvent, prosperous corporation, which was justifying the reason for its corporate existence, against the will of a minority however small (Abbot v. American Hard Rubber Co., 33 Barb. 578; People v. Ballard, 134 N. Y. 269; Matter of Timmis, 200 N. Y. 177). As a result, certain injustice to both majority and minority stockholders followed. A solution was achieved by the legislation which is now embodied in section 20 of the Stock Corporation Law. This enabled the holders of two thirds of the shares of stock to ‘ sell and [or] convey’ its property, rights, privileges and franchises or any interest therein and those opposed, if they so desired, were granted the right to an appraisal of, and payment for, the value of its stock. The statute was in derogation of the common law and, therefore, under applicable rules, has wrought a change only insofar as is expressed in, and required by, its provisions and the mischief to be remedied. (McKinney’s Cons. Laws of N. Y., Book 1, Statutes [1942 ed.], § 301.) ”
Accordingly, if minority stockholders do not have the statutory right of appraisal, the majority cannot proceed unilaterally on the assumption of the statutory grant of power to sell all the property of a corporation. The statute is then wholly inapplicable for all parties, and minority stockholders are entitled to equitable relief to enjoin a threatened sale of all the assets of their corporation.
But that does not mean that a stubborn minority can prevent a reasonable sale of its property by a Burchill Act corporation. Consistent with its position on the main question, Webb & Knapp, Inc., should have sought court approval of this sale when opposition to its proposed plan appeared. Indeed, its affidavits and supporting papers endeavor to make the point that the plan represents a benefit to the Corporation and its stockholders; and its brief states that the question is solely one of fact as to whether the action proposed is detrimental to the Corporation and its stockholders. Obviously, that issue of *325 fact cannot be resolved on this application but must await a trial or hearing.
It must be remembered that, if this Corporation, despite subsequent modification of its debenture and stock ownership, be treated as still a Burchill Act corporation, it is the policy underlying the act that the court retains jurisdiction to pass upon the merits of a sale of its property ending its existence. The design of the act was to develop a comprehensive system for liquidation in the public interest with the ‘ ‘ intrinsic reservation that the State may thereafter exercise its police power in the furtherance of that policy of orderly liquidation” (Matter of Colonial Trust Co. [61 W. 39th St. Corp.], 189 Misc. 335, 341). Here, it will be noted, there was an express reservation of jurisdiction with regard to any and all applications as might from time to time seem necessary ‘1 fully to consummate and carry out ” the plan of reorganization. The final act of consummation of the plan is, of course, the sale of this property. Whether the present is the propitious moment and, if so, what the conditions of the sale should be, are matters upon which all parties are entitled to be heard and to present proper proof.
The application to enjoin, pending trial or hearing, is accordingly granted to the extent of restraining defendants from taking any action to authorize or effect the proposed sale of the property in accordance with the notice of special meeting previously served. Defendants are at liberty to proceed with the proposal for amendment of the certificate to increase the number of directors and with the election of such additional number as shall be authorized. Settle order.