**LUMPKIN v. BOWERS, Collector of Internal Revenue.**

No. 476.

District Court, E. D. South Carolina, Columbia Division.

June 8, 1943.

Pinckney L. Cain (of Thomas, Cain & Black) and R. Beverley Herbert (of Herbert & Dial), both of Columbia, S. C. for plaintiff.

C. N. Sapp, U. S. Atty., of Columbia, S. C., and Gerard Hartzog, Sp. Asst. to the Atty. Gen., for defendant.

TIMMERMAN, District Judge.

This is a suit to recover individual income taxes assessed and paid under protest by the plaintiff for the years 1937 and 1936. The general contention of the plaintiff is that said taxes were illegally assessed and collected.

The cause came to a hearing before the Court on the 5th day of April, 1943, without a jury. The only testimony offered was in behalf of the plaintiff and it consists of the following documents:

(a) A statement of annual dividends received by the plaintiff on stock purchased in 1930 from the Trustees thereof under the Will of J. K. Crosswell, deceased;

(b) The pleadings in the case of The State of South Carolina on Relation of John M. Daniel, its Attorney General, v. J. H. Strong et al., as Executors and Trustees under the Will of John K. Crosswell et al., filed in the Court of Common Pleas of Sumter County, in the State of South Carolina, which was an action to set aside the sale of the aforesaid stock to the plaintiff herein (a defendant in the State Court case) and to require her to account for the dividends received on said stock; and

(c) The opinion of the State Supreme Court in said above stated case, reported in 185 S.C. 27, 192 S.E. 671.

There is slight, if any, real disagreement about the facts; the main dispute concerns inferences to be drawn therefrom and the application of the law thereto. After the hearing herein, on April 5, 1943, further consideration of the case was postponed pending the filing of briefs by counsel. This has been done.

The following facts seem to be conceded, or well established: H. D. Crosswell and J. K. Crosswell were brothers, the former, prior to his death, being the husband of the plaintiff. H. D. and his brother J. K. formed a South Carolina corporation known as H. D. & J. K. Crosswell, Inc., and this corporation was the owner of certain valuable franchise rights respecting the sale and distribution of Coca-cola syrup in South Carolina. Each brother owned one-half of the stock of said corporation. Under the will of H. D. Crosswell, his wife (who afterwards married a Lumpkin) became the owner of a life interest in the one-half of the stock in said corporation which he had owned in his life. Thereafter, the plaintiff and her brother-in-law operated said corporation successfully and profitably until the death of the brother-in-law in 1929, during all of which time the plaintiff was a salaried officer of said corporation. The brother-in-law also left a will wherein he conveyed his one-half of the stock of the corporation to certain trustees to establish and maintain an orphanage. All necessary information concerning the terms and conditions of said trust may be found in the records introduced in evidence.

Early in 1930 the plaintiff purchased from the trustees the stock formerly owned by her brother-in-law for the valuable consideration of $255,885. In 1936 the State Court action mentioned above was instituted in the Court of Common Pleas for Sumter County, South Carolina, to invalidate the sale of said stock and to require the purchaser (the plaintiff herein) to account for all income and profits received by her from said stock. It thus became necessary for the plaintiff to employ counsel and to incur other expenses to maintain and conserve the investment made in said stock and to protect the income received and to be received therefrom. The cause was referred to the Master of Sumter County, who found in favor of the validity of the sale. The Circuit Court overruled the Master's report and gave judgment for the plaintiff. Thereupon an appeal was taken to the State Supreme Court, which Court reversed the Circuit Court, holding in effect that the stock sale was valid and binding on the parties and that the complaint should be dismissed.

The attorneys' fees and other expenses incurred by this plaintiff in defense of the State Court action amounted in the aggregate to the sum of $26,798.22 for the year 1937, and $250 for 1936. The plaintiff claimed said amounts as legitimate deductions on her individual income tax returns for 1937 and 1936, and said deductions were disallowed. This resulted in the plaintiff having to pay the additional sum of $16,928.57 plus $2,259.15 interest, or a total of $19,187.72 as deficiency income

tax for 1937 and $155 for the year 1936. The amounts so assessed, including interest thereon, were paid under protest on June 4, 1940. Thereafter plaintiff duly filed a claim for the refund of such deficiency taxes and interest, and such claim was disallowed. This suit is the result of the disallowance.

No question has been raised as to the reasonableness of the fees paid by the plaintiff to her attorneys in the State Court litigation, or as to the other expenses incurred. The defendant has simply taken the broad position that the applicable statute does not permit "a deduction as an expense for attorney's fees paid in defense of title to stock in a corporation."

■ While there has been some discussion of successive Revenue Acts, commencing with the Act of 1936, I am of the opinion that this case is controlled by the Revenue Act of 1942. Section 121(e) of the Revenue Act of 1942, 26 U.S.C.A. Int.Rev.Acts provides: "Retroactive amendment to prior revenue acts. For the purposes of the Revenue Act of 1938 or any prior revenue Act the amendments made to the Internal Revenue Code by this section shall be effective as if they were a part of such revenue Act on the date of its enactment."

If the taxpayer is entitled to the deductions claimed and therefore to a return of the income taxes paid by her under protest because of the non-allowance of the deductions, the right asserted must find support in section 121 of the Revenue Act of 1942, which by reason of the above quoted provision thereof is made retroactively applicable to the present controversy.

Section 121(a) (2) of the Act provides for deductions in this language: "Nontrade or non-business expenses. In the case of an individual, all the ordinary and necessary expenses paid or incurred during the taxable year for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income."

This subdivision of the Act applies only to individuals. The plaintiff is an individual and hence she may claim its protection.

■ The expenses referred to in order to be deductible must be both ordinary and necessary. "Ordinary in this context does not mean that the payments must be habitual or normal in the sense that the same taxpayer will have to make them often. A lawsuit affecting the safety of a business may happen once in a lifetime. The counsel fees may be so heavy that repetition is unlikely. None the less, the expense is an ordinary one because we know from experience that payments for such a purpose, whether the amount is large or small, are the common and accepted means of defense against attack." Welch v. Helvering, 290 U.S. 111, page 114, 54 S.Ct. 8, 9, 78 L.Ed. 212.

■ It could hardly be argued that it would be unnecessary to defend a suit in which one was charged with constructive fraud and the purpose of which was to invalidate an investment of $255,000 and to require an accounting for dividends and income therefrom for a period of seven or eight years, amounting to well over $100,000. This is especially true when one of the necessary results of a loss of the suit would be the loss of control of a profitable corporation valued at more than a half million dollars. I therefore conclude that the expenses incurred by the plaintiff in defense of the State Court action were both ordinary and necessary in the sense of the Act.

■ It does not follow that the plaintiff is entitled to the deductions claimed simply because the expenses incurred were ordinary and necessary. More must appear. The expenses incurred must have been for the production of income, that is for the creation of income, or for the collection or acquiring of income, or for the management, control or direction, conservation or preservation, or for the maintenance, support or defense of property held for the production of income. To rightfully claim the deductions asked for, the plaintiff is not bound to establish all of the conditions stated in the Act, but it is necessary that she establish at least one of them. By incurring the expenses shown, the plaintiff did not create or collect any income. Unfortunately for her, she dissipated income in an endeavor to preserve a valuable property held by her for the production of income and to make secure the income she had already received, and upon which she had previously paid income taxes. The obvious object of the State suit was to divest the plaintiff of title to one-half of the capital stock issued by H. D. & J. K. Crosswell, Inc., which she had held for the purpose of receiving income

therefrom. The investment in the stock of the corporation was not made for sentimental reasons or for recreational purposes. The investment was made for purely business reasons and in the expectation that it would produce income. In fact, the investment in the stock of the corporation, the price paid therefor, was determined on the basis of its expected income producing potentialities.

The defendant relies upon an interpretive Bulletin issued by the Treasury Department,—Internal Revenue Bulletin No. 50, December 14, 1942, page 43: "Expenditures incurred in defending or perfecting title to property, in recovering property (other than investment property and amounts of income which, if and when recovered, must be included in income), or in developing or improving property, constitute a part of the cost of the property and are not deductible expenses. Attorney's fees paid in a suit to quiet title to lands are not deductible, but if the suit is also to collect accrued rents thereon, that portion of such fees is deductible which is properly allocable to the services rendered in collecting such rents. * * *"

To give the Bulletin cited the construction contended for by the defendant would be to concede that the Treasury Department had the right to revise the language of a Congressional enactment to the extent of saying that Congress did not mean what it said, but something slightly different. I am of the opinion that the Bulletin is not susceptible to the construction given it by the defendant.

The defendant seems to concede that if the fees in question had been paid to conserve income they would have been deductible under Section 121 of the Act, for in the defendant's brief, at page 9, it is said, "we respectfully submit that the attorneys' fees paid by her were not to conserve income within the meaning of Section 121, supra, but such fees were paid primarily in defense of her title to twenty-five shares of stock in the Crosswell Corporation."

If the stock in question had been non-income producing, it would have been valueless as "property held for the production of income", and there would have been no point in expending large sums of money purely to protect a few pieces of worthless paper. The only reason the stock was purchased and held was to obtain income therefrom. In other words, it was "property held for the production of income." The Bulletin quoted recognizes this distinction as is evidenced by the parenthetical clause contained therein. Just how one could conserve, maintain and manage property held for the production of income, I do not see, if the title thereto could not be defended from an unwarranted attack made upon it.

I am of the opinion that the deductions claimed are allowable and an order for judgment in accordance with this opinion will be signed upon presentation.