Chief Judge Conway.
This is a derivative action brought by Max Eisen, owner of 50% of the stock of Senior Estate, Ltd., a real estate corporation, primarily to set aside the sale of a sublease by said corporation through its officers John Post, Jr., and Anita Post Litsky, to defendant Louis Schweitzer. The sublease was of the Theatre de Lys located in Greenwich Village, New York City. While several causes of action were pleaded and tried below, the sole ground upon which the transfer is assailed in this court is that it was consummated without stockholder consent as required by section 20 of the Stock Corporation Law which provides, in part: “ A stock corporation * * * may voluntarily sell, lease or exchange its property, rights, privileges and franchises, or any interest therein or any part thereof; provided, however, that if such sale, lease or exchange is not made in the regular course of *523 business of the corporation and involves all or substantially all of its property, rights, privileges and franchises, or an integral part thereof essential to the conduct of the business of the corporation, such sale, lease or exchange shall not be made without the consent of either the holders of record of all of its outstanding shares entitled to vote thereon given in writing without a meeting or the holders of record of two-thirds of its outstanding shares entitled to vote thereon obtained at a meeting of the stockholders called pursuant to section forty-five.
If in view of the purposes and objects for which the corporation was created the particular sale may be regarded as one in the normal course of the business of the corporation, section 20 is inapplicable for, as we said in Matter of Miglietta (2660 Broadway Corp.) (287 N. Y. 246, 254-255): “ The test applied by the courts is not the amount involved, but the nature of the transaction, whether the sale is in the regular course of the business of the corporation and in furtherance of the express objects of its existence, or something outside of the normal and regular course of the business. (Matter of Timmis, 200 N. Y. 177, 181, 182.) ” (Emphasis supplied.) Stated conversely, if the sale is such as to render the corporation unable, in whole or in part, presently to accomplish the purposes or objects for which it was incorporated, section 20 is applicable (see, e.g., Matter of Kunin [Title Guar, & Trust Co.], 281 App. Div. 635, affd. 306 N. Y. 967; Matter of Hake [Hake Mfg. Co.], 285 App. Div. 316; Matter of Drosnes [Film Amusement Co.], 187 App. Div. 425; Matter of Nulle [Savarins, Inc.], 194 Misc. 622).
In the present case the certificate of incorporation of Senior Estate, Ltd.,— and the certificate, of course, determines the business a corporation is authorized to do — provides that such corporation was organized primarily and specifically: “To be engaged in the business of buying, owning, selling, .leasing and generally trading and dealing in lands, buildings and structures; to operate, let and sublet buildings and structures; * * * to buy, sell, trade and deal within the limits allowed by law in the stocks, bonds and obligations of this and other corporations and to perform any and all further acts and things which may in anywise contribute to the enhancement of its business
*524 Thus, it will readily be seen that Senior Estate, Ltd., is a so-called real estate corporation whose stated object and purpose was the general trading and dealing in lands, buildings and structures. We have already pointed out that section 20 has no application to the transaction of the very business a corporation is incorporated to perform. This must be so even where, as here, the corporation is a so-called real estate corporation. Otherwise, a corporation formed for the specific purpose of buying, selling and dealing in interests in real estate could never carry on that business except by the concurrence of the holders of at least two thirds of its outstanding shares. The Legislature has not chosen to declare that such a rule applies to real estate corporations and we are without power to announce such a principle by way of engrafting an exception upon the language of section 20 — it is of universal application to all stock corporations. Accordingly, it must be held the transaction here involved was not such as the statute allows only upon stockholder consent as provided therein. That being so, it is unnecessary to consider the other issues raised by Eisen.
In respect to the applicability of section 20 to this transaction, there is only one serious disagreement between Eisen and Schweitzer. It is Eisen’s position that whether or not the certificate of incorporation establishes Senior Estate, Ltd., as a real estate corporation only, is not controlling. The claim is made that while trading in real estate may have been the only authorized business for Senior, we must judge the applicability of section 20 on the basis of the business in which the corporation was actually engaged. Eisen’s argument is that Senior was actually engaged in the operation of a theatre and production of plays, that the sale of the lease and chattels effectively put it out of that business, and that, therefore, stockholder consent was necessary under the statute. Thus, he argues that the business of Senior Estate was the operation of the Theatre de Lys; that its sole asset was the leasehold interest in the premises on which the theatre was located; that it licensed the theatre to various productions and gave advice and guidance to its licensees; that it approved the plays, selected the manager, press agent, stage hands, electricians, porters and ticket takers and purchased props. While we do not think that Senior was actually engaged in the operation of *525 a theatre, there is no necessity to refer further to the facts upon which the claim is based, for even if Senior were actually engaged in such a business, we would have to reach the same result.
Eisen’s test which makes the actual business of a corporation the controlling feature, rather than its charter powers and purpose, is based in large measure upon certain language in the cases cited above, an example of which is the passage previously quoted from Matter of Miglietta (supra), viz., “ The test applied by the courts is not the amount involved, but the nature of the transaction, whether the sale is in the regular course of the business of the corporation and in furtherance of the express objects of its existence, or something outside of the normal and regular course of the business.” (Emphasis added.) Eisen concludes that to be deemed in the regular course of business, the transaction must be viewed in the light of a corporation’s normal day-to-day activity.
Initially it must be noted that in the cases referred to above, the businesses in which the corporations were actually engaged were businesses which were authorized by their charters. They were not engaged in an ultra vires activity or business. Moreover, the rationale of those eases in no way supports the notion that an activity not authorized by the charter — hence, an ultra vires activity — may be considered the business of the corporation for the purposes of section 20, a statute which, as we read it, assumes that corporations are legally engaged in doing what the State has granted them authority to do. We are not suggesting that the certificate of incorporation determines the business a corporation is in fact doing. Our holding is simply that an ultra vires activity cannot be deemed the regular business of the corporation within the meaning of section 20. The effect of our holding is not to render section 20 applicable only where the transaction is ultra vires. We do hold that if the only business conducted is ultra vires, it may not be deemed the regular business within the meaning of section 20. Obviously, a transaction may require stockholder consent though it be not ultra vires if it is “ not made in the regular course of business * * * and involves all or substantially all of its property * * *. ” What may be deemed the regular course of business cannot depend on some ultra vires and unauthorized pursuit, but rather upon the business which is conducted *526 pursuant to the sovereign grant of power via the certificate of incorporation. Assignees and grantees are entitled to rely on the charter and to presume compliance therewith. The efficacy of transfers of interests in real property, and the titles thereto, cannot be made to depend upon whether or not such conveyance is in or out of the course of an unauthorized corporate activity, when to the world it is entirely consonant with, and in the course of, the authorized business as stated in the recorded certificate of incorporation.
It is patent that the transaction here did not affect, in the slightest degree, the power or ability of Senior Estate, Ltd., to carry on the business of buying and trading in real estate, for which it was chartered. Therefore, section 20 of the Stock Corporation Law is inapplicable.
The order of the Appellate Division should be reversed and the judgment of Special Term reinstated, with costs in this court and in the Appellate Division. The question certified should be answered in the negative.