GOVERNING BOARD, the DAR House, the Freeman Plantation, the Texas Society Daughters of the American Revolution, et al., Appellants,

v.

Mrs. F. Hastings PANNILL, State Regent, the Texas Society, Daughters of the American Revolution, Inc., et al., Appellees.

No. 8469.

Court of Civil Appeals of Texas, Texarkana.

Nov. 29, 1977.

Rehearing Denied Jan. 31, 1978.

Jeffrey H. Hubbard, Houston, J. R. Cornelius, Jefferson, for appellants.

C. Leland Hamel, F. Hastings Pannill, Houston, Jesse M. DeWare, IV, Tyler, for appellees.

RAY, Justice.

This is a trespass to try title case. Originally The Governing Board, The DAR House-The Freeman Plantation, The Texas Society, Daughters of The American Revolution (Governing Board) and various chapters of the National Society of The Daughters of The American Revolution located in Texas and numerous individuals brought suit against Mrs. F. Hastings Pannill, State Regent, The Texas Society, Daughters of The American Revolution, Inc.; Mrs. Jesse M. DeWare, III, who is one and the same as Virginia Battle DeWare; Jesse M. DeWare, IV and Diane Ellen DeWare, appellees (defendants), seeking cancellation of a deed and possession of certain properties. When plaintiffs' fourth amended original petition was filed and its first amended supplemental petition related thereto was filed, the Governing Board, the DAR House-the Freeman Plantation, the Texas Society, Daughters of the American Revolution was dropped as a party-plaintiff and the John Davis Chapter, of the National Society of The Daughters of The American Revolution, of Abilene was the first named party-plaintiff. In the amended motion for new trial, the motion was styled such that it showed the plaintiffs to be, "John Davis Chapter, the National Society of the Daughters of American Revolution, Et Al."

The threshold question presented to this Court is whether or not it has acquired jurisdiction of the purported appeal. Appellees have filed motions to dismiss this appeal for lack of jurisdiction. The motions will be denied.

The cost bond shows the appellant and principal to be the Governing Board, the DAR House, the Freeman Plantation, the Texas Society, the Daughters of the American Revolution, et al., and the bond is signed for "The Governing Board, the DAR House, the Freeman Plantation, the Texas Society, Daughters of the American Revolution, et al" by "Julia J. Hubbard, Chairman" as principal. The judgment of the trial court recites that the party-plaintiffs were the John Davis Chapter and twenty-four other chapters and does not mention the Governing Board as a party-plaintiff.

■ Rule 356, Tex.R.Civ.P., requires that the bond for costs on appeal be filed with the clerk of the trial court within thirty days after rendition of judgment or order overruling motion for new trial. It is now well settled that the requirement that the bond be filed within thirty days is mandatory and jurisdictional. *Roth v. Maryland American General Insurance Co.*, 454 S.W.2d 779 (Tex.Civ.App. San Antonio 1970, writ ref'd). Rule 354, Tex.R.Civ.P., requires that a cost bond be filed unless excused by law.

■ Where there are several appellants, appellate jurisdiction is acquired only as to the appeal of those appellants who have timely filed an appeal bond. *Elliott v. San Benito Bank & Trust Co.*, 137 S.W.2d 1070, 1071 (Tex.Civ.App. San Antonio 1940, no writ). While an appellant's brief might appear to be on behalf of all appellants, the court of civil appeals acquires no jurisdiction over the judgment as it relates to those who did not perfect their appeal by filing an appeal bond. *Atterbury v. Bowman*, 186 S.W.2d 283 (Tex.Civ.App. Eastland 1945, no writ).

Rule 404, Tex.R.Civ.P., provides the following:

"All motions relating to informalities in the manner of bringing a case into court shall be filed and entered by the clerk on the motion docket within thirty days after the filing of the transcript in the Court of Civil Appeals, otherwise the ob-

jection shall be considered as waived, if it can be waived by the party."

Rule 430, Tex.R.Civ.P., provides that:

"When there is a defect of substance or form in any appeal or writ of error bond, then on motion to dismiss the same for such defect, the appellate court may allow the same to be amended by filing in such appellate court a new bond, on such terms as the court may prescribe."

Rule 437, Tex.R.Civ.P., provides in pertinent part the following:

"A judgment shall not be affirmed . . . or an appeal dismissed for defects or irregularities in appellate procedure, either of form or of substance, without allowing a reasonable time to correct or amend such defects or irregularities, . . ."

The Governing Board of which Mrs. Julia Hubbard is chairperson was not a party-plaintiff in the fourth amended original petition nor in the supplement thereto. The Governing Board was not named in the final judgment as a party-plaintiff and it was not mentioned in the style or body of the amended motion for new trial. No relief was sought on behalf of the Governing Board in the plaintiffs' fourth amended original petition and the supplement thereto.

■ The Governing Board is not an entity in itself, but is only a standing committee of appellee, the Texas Society, Daughters of the American Revolution, Inc. The only authority vested in the Governing Board is that provided by the by-laws of appellee, Texas Society (Tr. 534). That authority does not include the capacity to sue or be sued or to make bond. Only chapters of the National Society of the Daughters of the American Revolution located in Texas can be members of the Texas Society, not individuals. Mrs. Hubbard purported to act, in signing the bond, as the chairperson of the Governing Board. Since we have concluded that the Governing Board was not a party to the suit at the time of its final rendition, it had no authority to act through its chairperson in attempting the appeal for itself.

■ A party-appellant has been defined as a "person seeking to establish a right or on whom it is sought to impose a corresponding duty or liability." 44 Tex.Jur.2d, Parties, Sec. 1, p. 126; Rule 352, Tex.R. Civ.P. The party taking an appeal is the appellant. The Governing Board qualifies for neither party nor appellant since it did not seek any relief in the trial court or give any notice of appeal or file a motion for new trial. *Butman v. Jones,* 24 S.W.2d 796, 798 (Tex.Civ.App. Eastland 1930, no writ).

■ The Governing Board contends that by failure to file the motions to dismiss the appeal within thirty days after the filing of the transcript the appellees have waived any objections contained therein under Rules 404 and 405, Tex.R.Civ.P. The contention is without merit. *Buchele v. Woods,* 528 S.W.2d 95 (Tex.Civ.App. Tyler 1975, no writ). The failure to file a motion to dismiss for want of jurisdiction within thirty days after the filing of the record is not fatal. *Walker v. Cleere,* 141 Tex. 550, 174 S.W.2d 956, 958 (1943); *Valdez v. Gill,* 537 S.W.2d 477, 479 (Tex.Civ.App. San Antonio 1976, writ ref'd n. r. e.). The timely filing of a cost bond is jurisdictional and cannot be waived.

■ We have examined the record, including the affidavit of Julia Hubbard and the thirty affidavits filed on behalf of various Texas chapters of the National Society Daughters of the American Revolution who were party-plaintiffs, and under our very liberal construction of the rules relating to cost bonds, have concluded that Mrs. Hubbard was not only attempting to act for the Governing Board, but was acting in behalf of the chapters who were party-plaintiffs. Under Rule 406, Tex.R.Civ.P., this Court may look to affidavits to determine whether it has jurisdiction when the facts are not apparent in the record. Also, under Rule 14, Tex.R.Civ.P., affidavits may be made by the party or his agent.

While we are aware that some cases have held that the signature of the principal obligor is not necessary to the validity of an appeal bond signed by the sureties, we

think it is not very good practice. 3 Tex. Jur.2d, Appeal and Error-Civil, Sec. 324, p. 581. In the instant case, the bond states that the undersigned *Appellant* has taken an appeal to the Court of Civil Appeals and further states:

> "NOW THEREFORE, we said *Appellant* The Govering (sic) Board, The D A R House, The Freeman Plantation, The Texas Society, The Daughters of the American Revolution, *et al* as Principal, and LAWYERS SURETY CORPORATION as Surety, acknowledge ourselves bound to pay to Mrs. S. Hastings Pannill, State Regent, Texas Society, Daughters of the American Revolution, et al Appellee . . ." (Emphasis added.)

The bond is signed for "The Govering (sic) Board, The D A R House, The Freeman Plantation, The Texas Society, Daughters of the American Revolution, et al, by Julia J. Hubbard, Chmn., Principal." It would not have taken much time or effort to have prepared a bond naming the parties who were appealing and to have shown that one person was signing the bond in an authorized capacity as principal, for all the appellants. The filing of affidavits to support the contention that all of the parties-plaintiff have appealed, after what appears to be a cost bond filed by a stranger or non-party to the case and after the jurisdictional question has been raised by appellees, leaves wide room for a losing party to perfect his appeal or losing parties to perfect their appeals after the thirty days have elapsed for filing the cost bond required by Rules 354 and 356, Tex.R.Civ.P.

A bond executed by a mere nominal party, stranger or non-party to the suit is insufficient to invoke the jurisdiction of the appellate court when filed on the behalf of another who is a party to the suit. *Hawley v. Whitaker*, 33 S.W. 688 (Tex.Civ.App.1895, no writ); 3 Tex.Jur.2d, Appeal and Error-Civil, Sec. 195, p. 467; Sec. 196, p. 468; Sec. 199, p. 471; Sec. 316, p. 574.

This is a complex case in which there has been developed a voluminous record after which the trial court entered summary judgment in favor of the appellees. Our review of the record indicates there are material fact issues which must be determined by a jury or the trial court as the trier of the facts.

## SUMMARY OF THE FACTS

This controversy has its roots in the sale of the Austin headquarters property owned by the Texas Society, Daughters of the American Revolution (Society). The sale was a forced one because the property was within the boundaries of an urban renewal project. After this sale in 1971, Mrs. Ford Hubbard, then State Regent of the Society, began searching for a suitable replacement for the Austin headquarters. The search and acquisition of a new headquarters was one of Mrs. Hubbard's projects for 1971 when she was State Regent, and culminated in the purchase of the Freeman Plantation in Jefferson. The Plantation was purchased from Mr. and Mrs. Palmer Haworth at a cost of $61,000.00 which included the house, furnishings and surrounding acreage.

In 1972, Article IX establishing a governing board to oversee the Freeman Plantation was added to the Society By-Laws. Five members were elected to the Governing Board in March 1973. It soon became apparent that the Governing Board and the Executive Board of the Society held widely divergent views as to the powers and responsibilities of each. The Governing Board, chaired by Mrs. Hubbard (now an ex-State Regent) believed that it should be in complete charge of the affairs of the plantation which would include the finances surrounding the plantation. The Executive Board of the Society headed by the new State Regent, Mrs. F. Hastings Pannill, however, felt that no permanent committee, such as the Governing Board, could be allowed to handle any finances of the Society. This conflict may have wholly or partially been responsible for the loss of a Moody Foundation Grant of $25,000.00. The Moody Foundation Grant was initially negotiated by Mrs. Hubbard while still State Regent. The grant was conditioned upon the Society providing matching funds. Funds to match the grant were apparently

available, but were not released because of the conflict over whether the Governing Board or the Executive Board had jurisdiction over the Freeman Plantation finances.

One proposed solution to the continuing dispute which was having a debilitating effect on the Society was to remove Article IX from the By-Laws. The By-Laws provision was submitted to the full membership of the Society at the 1974 state conference and it was defeated. The proposal was resubmitted at the 1975 state conference and was again defeated. Upon the second failure, Mrs. Marguerite Daniel, a delegate from Kerrville, moved that

> "In order to end this controversy which is destructive to the Texas Organization and distasteful to the individual chapters, it is moved that the Freeman Plantation be appraised and sold at fair market value. The State Regent is authorized to sign the papers."

Mrs. Stanley A. Schmidt seconded the motion and after a short debate, the motion carried by a majority of 158 to 142.

Mrs. Jesse M. DeWare, III, was told of the proposed sale and began negotiations to purchase the plantation along with her son and daughter. The resolution to sell the plantation was passed on March 20, 1975, and on March 23, 1975, Mrs. DeWare and her husband signed a contract of sale in which they agreed to buy the plantation. Mrs. Nell Evans, a Jefferson realtor, handled the negotiations for the Society.

The Freeman Plantation was conveyed from the Society to the DeWares by general warranty deed on April 26, 1975. However, during the period from March 23 to April 26, 1975, the Governing Board and several individual members of the various chapters filed an application for injunction to enjoin the proposed sale. The alleged grounds for an injunction were based on claims that the Governing Board was responsible for the long-term plans of the plantation and the vote to sell the plantation should have been by two-thirds of the membership rather than a simple majority. A notice of lis pendens was filed with the Marion County clerk. By order of the trial court on July

14, 1975, the DeWares and the Society were temporarily enjoined from "disposing of, hypothecating, or damaging in any manner . . . ." the Freeman Plantation.

Mrs. Pannill filed a plea of privilege to be sued in her home county of Midland. This plea was denied by the trial court but was granted by this Court insofar as the case relates to her individually, and that part of the suit was ordered transferred to Midland County. Subsequently, Mrs. Pannill's term as State Regent expired and she has requested to be dismissed as a party in her capacity as State Regent and we initially granted the motion.

Appellants went to trial on their fourth amended original petition. The DeWares, appellees (defendants), filed a cross-action against the Society seeking to recover certain expenditures should the deed be rescinded. Numerous motions for summary judgment were filed by both sides. The trial court denied all appellants' (plaintiffs') motions for summary judgment and granted each of the appellees' (defendants') motions for summary judgment. The temporary injunction granted on July 14, 1975, was dissolved when the final judgment was rendered on September 17, 1976.

█ The amended motion for new trial was overruled by the court on November 18, 1976, and the cost bond was filed on November 29, 1976. We have concluded that the losing parties (plaintiffs) named in the trial court's judgment have perfected their appeal. The appellants submit thirteen points of error for our consideration.

## MATERIAL FACT ISSUES

█ In determining whether or not there are any material fact issues which are disputed and which require this Court to overturn the summary judgment of the trial court, we are required to review the evidence in the light most favorable to the party opposing the motion for summary judgment. *Gaines v. Hamman*, 163 Tex. 618, 358 S.W.2d 557, 562 (1962). We must accept as true all evidence of the party opposing the motion which tends to support

his contentions. All doubts are to be resolved against the movant. *Womack v. Allstate Insurance Company*, 156 Tex. 467, 296 S.W.2d 233, 235 (1956).

A defendant moving for summary judgment assumes a negative burden of showing as a matter of law that the plaintiff had no cause of action against the defendant and that no material fact issues remains. *Neigut v. McFadden*, 257 S.W.2d 864, 868 (Tex.Civ.App. El Paso 1953, writ ref'd n. r. e.).

In review of the record in this case, we cannot say that appellees have established as a matter of law that no false representations were made which induced members to sell the Freeman Plantation. There are fact issues concerning the representations and a fact issue exists as to the worth of the plantation at the time that it was sold. There is a fact issue as to whether or not the Executive Board of the Society authorized the sale of the Freeman Plantation.

The appellees state that appellants should not be permitted to bring this suit because such cause of action is statutorily precluded by Article 1396–2.03(A), Tex.Rev. Civ.Stat.Ann., Texas Non-Profit Corporation Act, which provides, "Lack of capacity of a corporation shall never be made the basis of any claim or defense at law or in equity." Appellees further contend that the cause of action is not brought under any of the exceptions listed in Article 1396–2.-03(B), supra. The defense of ultra vires for a non-profit corporation (Article 1396–2.03, supra) is the same as that of a corporation for profit (Tex.Bus.Corp. Act Ann. art. 2.04).

That a corporate act is invalid because it was beyond the authority of officers or directors may be asserted by a member in an action against the corporation to enjoin the activity. An action may also be asserted by the corporation acting directly or through members in a representative suit if the action is against incumbent or former officers or directors of the corporation for exceeding their authority. Article 1396–2.-

03(B)(1) and (2), supra. Throughout their petition and summary judgment proof, the appellants have sought to show that Mrs. Pannill in her capacity as State Regent (analogous to a corporate president or the chairman of the board of directors) exceeded her authority granted by the corporation's by-laws. Article 1396–2.03(B)(2), supra, allows such an action be maintained by the corporation or through members in a representative suit ". . . against the incumbent or former officers or directors of the corporation for exceeding their authority. . . ." if all procedural prerequisites are properly met. See *Ford v. Bimbo Corporation*, 512 S.W.2d 793, 795 (Tex.Civ.App. Houston-14th Dist. 1974, no writ), where the court states that all derivative suits brought on behalf of other shareholders similarly situated must meet the test of Rule 42, Tex.R.Civ.P., dealing with class actions. The representative must also show that the corporation has refused to bring such suit itself or cannot be expected to bring the action because the very person whose conduct is subject to complaint controls the corporation.

In order that the suit be shown to be justified, plaintiffs must allege actions of the board of directors or officers which are beyond their charter or by-law powers or a fraudulent transaction among themselves or with third persons such as will result in serious injury to the members or shareholders. *Cates v. Sparkman*, 73 Tex. 619, 11 S.W. 846 (1889). The comment in 40 Texas L.Rev. 677 (1962), "Ultra Vires Under The Texas Business Corporation Act" uses the *Sparkman* case to demonstrate the underlying principles of derivative suits. The writer states, at page 693, that Article 2.04(B)(2) of the Texas Business Corporation Act which is the same as Article 1396–2.03(B)(2) of the Texas Non-Profit Corporation Act codified the case law then in effect. The author also lists some considerations when determining whether or not to enjoin the activity complained of which are: (1) knowledge by the outsiders that the corporation was exceeding its authority, (2) authorization or acquiescence by

the shareholders in the act, and (3) extent of performance at the time the injunction proceedings were commenced. We conclude that the suit brought by the member chapters of the Society is sanctioned by Article 1396–2.03(B)(2), supra; that demand on the corporation to bring suit would have been futile because the parties complained of controlled the Society; and that the appellees have not shown as a matter of law that the appellants are not entitled to maintain the suit. Appellees' proof merely establishes that an issue does exist as to the propriety of such an action.

The Order of this Court entered on April 12, 1977, dismissing Mrs. F. Hastings Pannill as an appellee is rescinded. Appellants' "Motion for Rehearing of Motion to Dismiss of Mrs. F. Hastings Pannill" is granted and she is reinstated as a party-appellee in her capacity as a former State Regent of the Society. In an unpublished opinion delivered by this Court on May 4, 1976, we transferred the case as it applies to Mrs. Pannill individually to Midland County when we decided her plea of privilege should have been granted by the trial court as it related to her in her individual capacity.

A fact issue exists as to whether Mrs. Pannill exceeded her authority while acting in her capacity as State Regent. Suit is authorized against her under Article 1396–2.03(B)(2), supra.

The record demonstrates that a material fact issue exists as to whether or not the DeWares had notice of the claim of appellants such that the DeWares could not be bona fide purchasers of the property. Much is made about the effect of the lis pendens notice and the original suit as not being notice to the DeWares, but Mrs. DeWares' deposition statements, her affidavit and the letter she signed on the date of the conveyance are contradictory and raise a question of fact to be resolved by the trier of fact regarding whether Mrs. DeWare had sufficient knowledge of the controversy as to be on actual notice of the claims of the appellants.

Material fact issues exist concerning ratification of the sale at the 1976 state conference. Full knowledge of all the facts and circumstances is necessary if there is to be a ratification. *Leonard v. Hare*, 161 Tex. 28, 336 S.W.2d 619 (1960); *McCleskey v. McCleskey*, 7 S.W.2d 657 (Tex.Civ.App. Amarillo 1928, no writ). Whether or not the delegates voted with full knowledge of the facts surrounding the conflict is in question, therefore ratification was not established as a matter of law.

The valuation of the Freeman Plantation is disputed by all sides. The value placed upon the plantation has a dramatic effect on the percentage of assets disposed of by the sale to the DeWares. The appellees contend that even if the plantation is given a value as urged by appellants, its sale would only constitute a disposal of 53% of the Society's assets which is not substantially all its assets; whereas, appellants claim the Freeman Plantation is necessary to the function of the Society and without it the Society cannot continue its charter purposes.

■ Article 1396–5.09 requires that a two-thirds vote of all qualified voting members is necessary in order to dispose of all or substantially all of a non-profit corporation's assets. The test to be applied when ascertaining whether all or substantially all assets are about to be sold is not the amount or value of the assets disposed of, but rather the nature of the transaction, that is, is the sale in furtherance of the express object of the corporation. *Good v. Lackawanna Leather Co.*, 96 N.J.Super. 439, 233 A.2d 201, 210 (N.J.Sup.Ct.Ch.1967); *Eisen v. Post*, 3 N.Y.2d 518, 169 N.Y.S.2d 15, 18, 146 N.E.2d 779, 780 (N.Y.Ct.App.1957); *In Re Timmis*, 200 N.Y. 177, 93 N.E. 522 (N.Y.Ct.App.1910). See *Stiles v. Aluminum Products Co.*, 338 Ill.App. 48, 86 N.E.2d 887, 889 (1st Dist. 1949); Annot., 9 A.L.R.2d 1306, 1309 (1950).

Whether or not the sale is in furtherance of the corporation's stated purpose can only be determined after a more detailed development of the facts. Under the present state of the record, the issue is in dispute,

and the dispute may only be settled by a trier of fact. If the trier of fact finds that the Freeman Plantation comprised substantially all the assets of the Society, then the vote on the resolution was insufficient because it was by a majority rather than by two-thirds of the voting members.

There is a material fact issue as to whether or not the motion to sell the Freeman Plantation included the furnishings. The motion is ambiguous and the disputed should be settled by the trier of fact.

There is a material fact issue related to the fair market value of the Freeman Plantation. The motion states that the Freeman Plantation be appraised and sold at its fair market value. Appellants rely upon testimony elicited at an earlier hearing which would set the fair market value much higher than the sale price. Appellees dispute this through affidavit and deposition testimony. Thus, the trier of fact must resolve the issue as to the fair market value.

The Attorney General has not been served with process, and has not made an appearance so as to become a party in this proceeding. He has, however, filed an amicus curiae brief.

Appellants state there are two reasons why the Attorney General should have been made a party to this suit. First, they contend that inasmuch as the Society is organized for charitable purposes, it is to be regarded as a charitable trust, and Article 4412, Tex.Rev.Civ.Stat.Ann., requires joinder of the Attorney General.

It is not disputed that the Society is in some sense a charitable trust, but it is immaterial to the question before the Court. The judgment of the court below is rendered void for failure to make the Attorney General a party only in situations specifically described in Article 4412a(2). These four situations are: (a) To terminate the charitable trust or to distribute its assets to others than charitable donees, or (b) To depart from the objects of a charitable trust as they are set forth in the instrument creating the trust, or (c) To construe, nullify or impair the provisions of any instrument cre-

ating or affecting a charitable trust, or (d) To contest the probate of any alleged will through which money or property is given for charitable purposes.

The fact that one party to the suit is a charitable trust or is organized for charitable purposes does not by itself bring into play the mandatory requirements of Article 4412a(2), supra, the failure to comply with which would render the judgment invalid. Article 4412a, supra, must be read to mean that the requirement of the joinder of the Attorney General exists only in the circumstances specifically enumerated.

[23] The object of the present suit is the recovery of property. It is not a suit for construction of any document. That appellants in a trial on the merits might argue for a particular interpretation of the Society's By-Laws, Charter or internal rules in order to establish a basis for cancellation of the deed is incidental to the object of this suit. We hold that the Attorney General of the State of Texas is not a necessary party to this suit under Article 4412a(2), supra.

The summary judgment entered by the trial court is reversed and the cause remanded for further proceedings.

CORNELIUS, C. J., not participating.