**Ex parte Georgia B. EDMAN et al.**

**No. B–9374.**

Supreme Court of Texas.

Nov. 5, 1980.

Rehearing Denied Nov. 26, 1980.

Michael Anthony Maness, Alvin A. Horne, Houston, for relators.

Jeffrey H. Hubbard, Houston, for respondent.

POPE, Justice.

This is a habeas corpus proceeding. It is another of a series of disputes between those who represent the majority and the minority chapter members of the Texas Society, Daughters of the American Revolution, Inc. [DAR]. *See Governing Board v. Pannill*, 561 S.W.2d 517 (Tex.Civ.App.–Texarkana 1978, writ ref'd n. r. e.); *Texas Society v. Fort Bend Chapter*, 590 S.W.2d 156 (Tex.Civ.App.–Texarkana 1978, writ ref'd n. r. e.). The question presented is whether Georgia B. Edman and Crystelle R. Wickett, acting as officers of and upon authorization of the Society in paying legal expenses, violated an injunctive order prohibiting the Society and its officers from spending money which was not the ordinary business of the Society. We grant the writ of habeas corpus and order the relators discharged.

Our relators are Georgia B. Edman, the State Regent, and Crystelle R. Wickett, the State Treasurer, of the Texas Society, DAR. Edman and Wickett, upon authorization in 1975 by the majority of the chapters of DAR, negotiated the sale of the Freeman Plantation which was the Society's state headquarters located in Marion County. The Ford Bend Chapter and others representing the minority sued the Texas Society for a permanent injunction, accounting, and the cancellation of the Society's Freeman Plantation deed to Mr. and Mrs. Jesse M. DeWare. *See Governing Board v. Pannill, supra.* The District Court of Marion County in 1977, after a hearing on the temporary injunction, enjoined the DAR and its officers from:

1. Selling, transferring, assigning, hypothecating, encumbering or in any manner disposing of the stocks, and bonds, or proceeds from the sale thereof presently on hand or other assets of the Society.

2. Incurring any indebtedness or expending any sum of money for any

purpose other than in carrying on the ordinary business of the Society.

The Society appealed, and it was during the pendency of the appeal to the court of civil appeals that proceedings were commenced charging relators, Edman and Wickett, with the violation of the order. The court of civil appeals, pursuant to the procedures explained in *Ex parte Werblud*, 536 S.W.2d 542 (Tex.1976), ordered the trial court to conduct an evidentiary hearing concerning the contempt charge against Edman and Wickett. The charges against relators, Edman and Wickett, were that they, as officers for the Society, had violated the order of the trial court by writing nine checks which were not for "carrying on the ordinary business of the Society." The trial judge conducted the hearing and made a recommendation that the court of civil appeals find that seven of the checks[1] were written to pay litigation expenses and were not violations of the injunction, but that two of the checks[2] were written to circumvent and avoid the injunction and were violations. The court of civil appeals did not follow the recommendation. It held that Edman and Wickett were in contempt, but in doing so, held that they violated the injunction by spending the money evidenced by the seven checks but were not in contempt for writing the other two checks. We hold that the expenditure of funds by the Society through its officers for the defense of a lawsuit instituted by the minority members was an expenditure for carrying on the ordinary business of the Society.

The holding of the court of civil appeals that the Society is a mere "nominal party defendant" has no support in this or the prior records that have been brought to this court, because it was the Society's deed that is the underlying issue. The minority chapters sued to cancel the Society's deed to the Freeman Plantation and for an accounting by the Society. *See Governing Board v. Pannill*, 561 S.W.2d 517, 522–23 (Tex.Civ. App.–Texarkana 1977, writ ref'd n. r. e.). Relator Edman in her actions which the underlying suit brings in question, was acting as State Regent, the head officer of the Texas Society, and relator Wickett was acting as the State Treasurer of the Texas Society. Both were acting for the Society in the conduct of its business, however controversial it may have been.

■ The defense of a suit ordinarily is a part of the ordinary business of a non–profit corporation. The right to sue and be sued, complain and defend, in its corporate name is one of the express statutory general powers of a non-profit corporation. Tex. Rev.Civ.Stat.Ann. art. 1396–2.02(A)(2); *see, Conley v. Daughters of the Republic of Texas*, 151 S.W. 877 (Tex.Civ.App.–San Antonio 1912), *rev'd on other grounds*, 106 Tex. 80, 156 S.W. 197 (1913); *Stroh v. Odom*, 225 S.W.2d 626, 630 (Tex.Civ.App.– Austin 1949, writ ref'd n. r. e.).

■ The expenditure of reasonable sums of a corporation's funds to defend a suit is the conduct of the ordinary business of a corporation. In *Welch v. Helvering*, 290 U.S. 111, 114, 54 S.Ct. 8, 9, 78 L.Ed. 212 (1933), the Supreme Court of the United States said:

A lawsuit affecting the safety of a business may happen once in a lifetime. The

1. CHECK

| NO. | DATE | PURPOSE | AMOUNT |
|---|---|---|---|
| 230 | June 23, 1977 | Aircraft rental (Legal Defense) | $ 105.00 |
| 231 | June 23, 1977 | Retainer, legal fee | 1,500.00 |
| 236 | July 7, 1977 | Transcript (Court Proceedings) | 257.40 |
| 237 | July 10, 1977 | Aircraft rental (Legal Defense) | 122.00 |
| 256 . | September 20, 1977 | Advance on Lawyer Expenses | 1,000.00 |
| 260 | October 5, 1977 | Legal fees | 1,241.20 |
| 275 | November 30, 1977 | Advance on Legal Fees | 1,000.00 |
| | | TOTAL | $5,225.60 |

2. The Society also made the following two transfers of funds from the main DAR account into the DAR Legal Defense Fund:

| 250 | August 29, 1977 | Legal Defense Fund | $ 78.00 |
|---|---|---|---|
| 296 | January 31, 1978 | Legal Defense Fund | 74.35 |
| | | TOTAL | $ 152.35 |
| | | GRAND TOTAL | $5,377.95 |

counsel fees may be so heavy that repetition is unlikely. None the less, the expense is an ordinary one because we know from experience that payments for such a purpose, whether the amount is large or small, are the common and accepted means of defense against attack.

Attorney fees have been consistently considered ordinary and necessary if they are directly connected with or proximately result from the conduct of business.[3] *Trust of Bingham v. Commissioner,* 325 U.S. 365, 65 S.Ct. 1232, 89 L.Ed. 1670 (1945); *Kornhauser v. U. S.,* 276 U.S. 145, 152, 48 S.Ct. 219, 220, 72 L.Ed. 505 (1928).

■ The underlying controversy is one by which the minority of the Society's members challenge the sale by the majority of the Freeman Plantation. The minority proceed against the corporation and its officers in the nature of a derivative action that is brought for the benefit of the corporation. The law does not require a corporate majority to adopt a posture of neutrality every time a minority of its stockholders question the actions and judgments of the majority. Such a rule would place the control of the corporation in the hands of the minority and would place the cost of protecting the corporate majority upon its officers as individuals who may not be capable of bearing the financial burden. *Blish v. Thompson Automatic Arms Corp.,* 30 Del.Ch. 538, 64 A.2d 581 (1948); *National Bankers Life Ins. Co. v. Adler,* 324 S.W.2d 35, 37 (Tex.Civ.App.–San Antonio 1959, no writ).

In the case before us, all of the proof is that the questioned funds were spent for the defense of the corporate suit. The Society was not prohibited by the injunction from carrying on its ordinary business, and the payment of reasonable legal expenses to defend itself was the conduct of its ordinary business.

We grant the writ of habeas corpus and order the relators discharged.

GARWOOD, J., not sitting.

---

**3.** Generally, under the federal tax laws, legal fees and costs are considered ordinary and necessary expenses of doing business. *See* 34 Am. Jur.2d *Federal Taxation* §§ 6090 et seq. (1979). For cases defining or interpreting "ordinary business expense" as a legal expense in a federal tax situation *see Commissioner v. Tellier,* 383 U.S. 687, 86 S.Ct. 1118, 16 L.Ed.2d 185 (1966); *United States v. Mountain States Mixed Feed Co.,* 365 F.2d 244, 245 (10th Cir. 1966); *Swed Distributing Co. v. Commissioner,* 323 F.2d 480, 483 (5th Cir. 1963); *Kanne v. American Factors, Ltd.,* 190 F.2d 155, 159 (9th Cir. 1951); *Rassenfoss v. Commissioner,* 158 F.2d 764, 767 (7th Cir. 1946); *Knight–Campbell Music Co. v. Commissioner,* 155 F.2d 837, 840 (10th Cir. 1946); *Hales–Mullaly, Inc. v. Commissioner,* 131 F.2d 509, 511, 512 (10th Cir. 1942); *Crowley v. Commissioner,* 89 F.2d 715, 718 (6th Cir. 1937); *Foss v. Commissioner,* 75 F.2d 326, 327 (1st Cir. 1935); *Alexander Sprunt & Son, Inc. v. Commissioner,* 64 F.2d 424, 428 (4th Cir. 1933); *Boulder Building Corp. v. United States,* 125 F.Supp. 512, 514 (W.D.Okl. 1954); *International Building Co. v. United States,* 97 F.Supp. 595, 599 (E.D.Mo.1951); *Lomas & Nettleton Co. v. United States,* 79 F.Supp. 886, 896 (D.Conn.1948); and, *Lumpkin v. Bowers,* 50 F.Supp. 874, 876 (E.D.S.C.1943). *See also Hales–Mullaly, Inc. v. Oklahoma Tax Commission,* 100 P.2d 274, 277 (Okl.1940).