776 F.2d 1425
 Nancy E. SUTHERLAND; and Donald Sutherland and Stephen
Newnham, Trustees of the Ralph L. Evans Trust,
Plaintiffs-Appellants,
v.
KAONOHI OHANA, LTD., Defendant-Appellee,
KAONOHI OHANA, LTD., Plaintiff-Appellee,
v.
Nancy E. SUTHERLAND, Defendant-Appellant.
 No. 84-2618.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Aug. 16, 1985.
Decided Nov. 22, 1985.
 
 Alexander C. Marrack, Honolulu, Hawaii, for plaintiffs-appellants, defendant-appellant.
 Boyce R. Brown, Jr., Brown & Johnston, Honolulu, Hawaii, for Kaonohi Ohana, Ltd.
 Appeal from the United States District Court for the District of Hawaii.
 Before NORRIS and REINHARDT, Circuit Judges, and GILLIAM,* District Judge.
 PER CURIAM:
 
 I. BACKGROUND
 
 1
 Appellee Kaonohi Ohana, Ltd. is a Hawaii corporation that was formed pursuant to a reorganization plan in a Chapter 11 bankruptcy proceeding in which a Dr. Alex Ferreira was the debtor. Pursuant to the plan, Ferreira assigned title to a 5.5 acre parcel of land on the island of Kauai, Hawaii to appellee corporation. Ferreira's creditors were to assign their claims to appellee in return for shares of its stock. When appellee sold the land, its only asset, it was to be liquidated and the proceeds distributed to the shareholders.
 
 
 2
 On May 4, 1984, Boyce R. Brown, vice-president of appellee, acting for appellee corporation's board of directors, agreed to sell the parcel of land to appellants for $1.4 million. On June 6, appellee received an offer from a third party to purchase the property for $1.75 million. On June 12, Brown informed appellants that at the request of Ferreira's creditors he had accepted the new offer on behalf of appellee's board of directors.
 
 
 3
 Appellants, viewing Brown's actions as an anticipatory repudiation, promptly filed suit for specific performance and damages in federal district court. On the same day, appellee filed suit in Hawaii state court, seeking a declaration that section 416-33 of the Hawaii Revised Statutes had not been complied with in the case of appellants' offer and therefore appellants did not have a binding contract with appellee. The state court action was removed to federal district court, where both parties moved for summary judgment. Appellants also moved for summary judgment in the action for specific performance and damages, while appellee moved to dismiss. Appellee's motion for summary judgment and its motion to dismiss were granted, and an appeal was taken.
 
 
 4
 A grant of summary judgment is reviewed de novo, Lojek v. Thomas, 716 F.2d 675, 677 (9th Cir.1983), as is the grant of a motion to dismiss. North Star International v. Arizona Corporation Commission, 720 F.2d 578, 580 (9th Cir.1983). The district court's interpretation of Hawaii law is also reviewed de novo. In re McLinn, 739 F.2d 1395 (9th Cir.1984) (en banc).
 
 
 5
 The only questions before us on appeal are whether the proposed sale to appellants was subject to the requirements of section 416-33 of the Hawaii Revised Statutes, and if so, did appellee's actions constitute compliance.
 
 II. ANALYSIS
 Section 416-33 provides in part that:
 
 6
 A voluntary sale ... of all or substantially all of the property and assets of any domestic corporation ... may be authorized by it ... when and as authorized or approved by the affirmative vote or consent of the holders of not less than three-fourths of all stock issued and outstanding and having voting power.
 
 
 7
 Appellants argue that because appellee corporation was organized for the sole purpose of selling the parcel of land (either before or after development), appellants' proposed acquisition was not subject to section 416-33. The courts of Hawaii have never considered the question of whether section 416-33 applies in such circumstances,[1] so we must use our best judgment to determine how Hawaii's highest court would interpret the statute. Andersen v. Bureau of Indian Affairs, 764 F.2d 1344, 1346 (9th Cir.1985).
 
 
 8
 Statutes such as section 416-33 have been enacted in most, if not all, states, and the purpose is generally held to be to ensure that the shareholders approve of any sale of assets which would prevent the corporation from accomplishing the purposes or objects for which it was incorporated. Annot., 9 A.L.R.2d 1306, 1309-10 (1950); 19 Am.Jur.2d Corporations Sec. 1531 (1965). When a sale would not prevent a corporation from accomplishing its purposes or objectives, courts have implied an exception and held that the shareholder consent statute does not apply, despite what would seem to be the unconditional language of the statutory provisions. 9 A.L.R.2d at 1310; 19 Am.Jur.2d, supra, Sec. 1531. In deciding whether an exception to the statute is applicable, the inquiry is often framed in terms of whether, in light of the corporation's purposes and objectives, the sale at issue is in the corporation's ordinary course of business. See, e.g., Eisen v. Post, 3 N.Y.2d 518, 146 N.E.2d 779, 169 N.Y.S.2d 15 (1957); 19 Am.Jur.2d, supra, Sec. 1531.[2]
 
 
 9
 Not only the purpose underlying shareholder consent statutes, but also their history supports the creation of an "ordinary course of business" exception to the statutory language. The statutes, including Hawaii's,[3] were enacted for the purpose of abrogating the common-law rule which required unanimous consent of the shareholders. However, the common-law rule itself had an exception for sales in the ordinary course of the corporation's business, and the courts have continued to apply that exception to the statutory provisions on the theory that the statutes were intended to abrogate only the unanimity rule, not the exception. See Fontaine v. Brown County Motors Co., 251 Wis. 433, 29 N.W.2d 744 (1947); In re Timmis, 200 N.Y. 177, 93 N.E. 522 (1910).
 
 
 10
 In particular, the courts have held that any sale, no matter how large, by a corporation formed for the purpose of selling a certain group of assets and then liquidating, is in the corporation's ordinary course of business and thus is not subject to shareholder consent statutes. See, e.g., Jeppi v. Brockman Holding Co., 34 Cal.2d 11, 206 P.2d 847 (1949);[4] In re Miglietta, 287 N.Y. 246, 39 N.E.2d 224 (1942); Continental Bank & Trust Co. v. W.A.R. Realty Corp., 270 App.Div. 577, 61 N.Y.S.2d 273, aff'd mem. & appeal denied mem., 295 N.Y. 877, 884, 67 N.E.2d 517, 519 (1946); Thayer v. Valley Bank, 35 Ariz. 238, 276 P. 526 (1929); 9 A.L.R.2d at 1315-16; 19 Am.Jur.2d, supra, Sec. 1531. The rationale is that the corporation was formed for the very purpose and objective of selling all its assets; a sale of all the corporation's assets, far from hindering such a corporation, completely fulfills its goals. Thus, application of a shareholder consent statute to such a sale would frustrate, rather than further, the purposes of the statute. It is instructive to note that the corporations in Miglietta and Continental Bank, like appellee corporation, were formed for the purpose of disposing of real property, and that most of the assets of the corporation in Jeppi were also real property. Furthermore, the corporation in Continental Bank, like appellee corporation, was formed for the purpose of trying to recover at least some money for creditors of an insolvent entity.
 
 III. CONCLUSION
 
 11
 The exception that has been created to what would facially appear to be the absolute rule of the shareholder consent statutes constitutes a rational and consistent effort to implement the statutory provisions in light of their purpose and history, and clearly represents the prevailing rule in American jurisprudence. Thus, we believe that the courts of Hawaii would adopt the exception discussed above.[5] Accordingly, since appellee corporation was formed for the purpose of selling its only asset, a parcel of real estate, consent of its shareholders under section 416-33 was not required; the district court erred in granting summary judgment in favor of appellee in the suit for declaratory relief, and in dismissing the action for specific performance and damages.[6] Therefore, we reverse and remand to the district court for further proceedings consistent with this opinion.
 
 
 12
 REVERSED AND REMANDED.
 
 
 
 *
 Hon. Earl B. Gilliam, United States District Judge for the Southern District of California, sitting by designation
 
 
 [1]
 Section 416-33 has been construed by the courts in apparently only two cases. See MDG Supply, Inc. v. Calmes, 52 Hawaii 154, 472 P.2d 499 (1970) (per curiam); Hawaiian Trust Co. v. United States, 178 F.Supp. 637 (D.Hawaii 1959), rev'd on other grounds, 291 F.2d 761 (9th Cir.1961). Neither case addresses the issue now before us
 
 
 [2]
 "In the ordinary course of the corporation's business" is a term of art when used in the context of shareholder consent statutes
 
 
 [3]
 See 1937 Hawaii House of Representatives Journal (Regular Session) 1073-74
 
 
 [4]
 The parties agreed at oral argument that the courts of Hawaii frequently look to decisions from California when deciding cases of first impression
 
 
 [5]
 The courts of Hawaii may never have to actually decide this question, because effective July 1, 1986, Sec. 416-33 is repealed and replaced by Sec. 416-78, which clearly recognizes an exception for sales in the ordinary course of the corporation's business. See 1983 Hawaii Sess.Laws Act 167. Both parties have invited us to draw conclusions as to the meaning of Sec. 416-33 from the enactment of Act 167 and its accompanying legislative history. Because of the terseness of the legislative history, however, we find it inconclusive
 
 
 [6]
 Thus, we need not reach the issue of whether appellee corporation in fact complied with the requirements of Sec. 416.33