NO. 07-03-0346-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL A



SEPTEMBER 16, 2005


 ______________________________



VERNON R. YOUNG, JR., APPELLANT



V.



LEWIS QUALLS, APPELLEE


_________________________________



FROM THE 217TH DISTRICT COURT OF ANGELINA COUNTY;



NO. 31,681-98-12; HONORABLE DAVID WILSON, JUDGE


_______________________________



Before REAVIS and CAMPBELL, JJ. (1)

OPINION


 Vernon R. Young, Jr. appeals a judgment in favor of Lewis Qualls for breach of their
partnership agreement. Finding the evidence supporting the damages verdict to be
factually insufficient, we will suggest a remittitur. 

 Young and Qualls engaged in real estate development projects with Young providing 
financing and Qualls either developing the property or constructing residences on property
purchased by Young. Although Qualls and Young had a written partnership agreement
governing a prior project, they relied on an oral partnership agreement in developing the
property discussed here. 

 In 1994, Qualls contacted Young and proposed the purchase of a 75-acre tract of
land outside Lufkin to develop mobile home lots that would be sold to mobile home dealers. 
The property was purchased by Young in the name of Hudson Place, LLC, an entity he
formed and controlled. Qualls owned no interest in the limited liability company. The name
Hudson Place also was adopted for the development. Young and Qualls agreed they
would divide any profits from the project equally after invested funds were repaid with
interest at 12 per cent per annum. After its purchase Young and Qualls changed the deed
restrictions for the property, excluding mobile homes and requiring homes built on the
property to be traditional residences. 

 Qualls and his wife Pam worked in an office at the site and supervised the clearing
and development of the property for 18 months. They sent the bills for their costs to
Young, who paid them. Prior to June 1996 Qualls and Young conducted negotiations with
a homebuilder, and Qualls made other efforts to sell lots in the subdivision. No lots had
been sold by that time, though, and during that month Young had the electricity and
telephone to the office turned off without notice to Qualls. When they called him to ask
about these events, Young told Qualls and his wife to take their personal belongings and
vacate the property. They did so.

 Young also owned a mobile home dealership in Lufkin. Later in June 1996 Young
decided to re-plat the property from half-acre plots to quarter-acre plots for use as a mobile
home rental park. The deed restrictions were modified to reflect this change in July 1996. 
Barbara Unsel, an employee at Young's mobile home dealership, assumed the additional
duty of managing Hudson Place as a mobile home park. Qualls filed suit in December 1998
seeking damages for breach of the partnership agreement, injunctive relief, and
appointment of a receiver. (2) 

 After a jury trial in November 2002, the trial court signed a judgment awarding Qualls
$142,550.00 in damages, $58,364.80 in prejudgment interest on that amount to the date
of judgment, and $46,331.86 in attorney's fees. The judgment was based on the jury's
responses to the following questions: (1) Did a partnership agreement exist between Lewis
Qualls and Vernon Young for the development of Hudson Place? (2) Did Vernon Young
breach the partnership agreement with Lewis Qualls? and (3) What sum of money, if any,
if paid now in cash, would fairly and reasonably compensate Lewis Qualls for his damages,
if any, that resulted from such breach of the partnership agreement? 

 Young presents four issues challenging the judgment. He contends there is no
evidence or, in the alternative, insufficient evidence to support the jury's finding of
damages. He presents the same challenge to the jury's finding of a breach of the
partnership agreement. Young also contends the trial court erred in awarding attorney's
fees and in awarding prejudgment interest. On appeal, Young does not contest the jury's
finding that a partnership agreement existed. 

Scope and Standard of Review

 Young's first two issues present no evidence and insufficient evidence complaints. 
In reviewing his no evidence issues, we will view the evidence in a light that tends to
support the jury's findings and disregard all evidence and inferences to the contrary. 
Bradford v. Vento, 48 S.W.3d 749, 754 (Tex. 2001); Weirich v. Weirich, 833 S.W.2d 942,
945 (Tex. 1992). A legal sufficiency challenge will be sustained when (a) there is a
complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of
evidence from giving weight to the only evidence offered to prove a vital fact, (c) the
evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence
conclusively establishes the opposite of a vital fact. Merrell Dow Pharm., Inc. v. Havner,
953 S.W.2d 706, 711 (Tex. 1997). 

 Considering his contention the evidence is factually insufficient to support a finding,
we will review all the evidence, both that favorable and that contrary to the finding, and may
reverse only if the verdict is so against the overwhelming weight of the evidence as to be
clearly wrong and unjust. Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam); see
Golden Eagle Archery, Inc. v. Jackson, 116 S.W.3d 757, 761-62 (Tex. 2003); Plas-Tex, Inc.
v. U.S. Steel Corp., 772 S.W.2d 442, 445 (Tex. 1989). 

 Young made no objection to the form of the questions or instructions contained in
the court's charge. We review the sufficiency of the evidence, then, in light of the charge
given. Bradford, 48 S.W.3d at 754; City of Fort Worth v. Zimlich, 29 S.W.3d 62, 71 (Tex.
2000).

Breach of Partnership Agreement

 We begin with Young's second issue, in which he challenges the evidence
supporting the jury's finding that he breached his partnership agreement with Qualls for the
development of Hudson Place. Qualls's pleadings complained that Young, among other
actions, "refused . . . to recognize Qualls' interest as a partner, or even the existence of
the partnership . . . and expelled Qualls from the partnership offices and property." Qualls
further alleged that Young "has further refused to recognize that the property of Hudson
Place, L.L.C. is an asset of the partnership." 

 The unchallenged finding of the jury was that Young and Qualls had a partnership
agreement for the development of Hudson Place. (3) In connection with the question inquiring
whether Young breached that agreement, the jury was instructed that a partner owes to the
partnership and to other partners a duty of loyalty, and that the duty includes accounting
to the partnership and holding for it any property, profit, or benefit derived by the partner
in the conduct and winding up of the partnership business or from use by the partner of
partnership property; and includes refraining from dealing with the partnership in a manner
adverse to the partnership. (4) The Hudson Place property was conveyed to the limited
liability company controlled by Young, (5) but his duties as partner encompassed a duty to
hold and use it for the partnership. See TRPA Arts. 6132b-2.04, 6132b-4.01(e), 6132b-4.04(b)(1); 19 Robert W. Hamilton, et al., Texas Practice: Business Organizations § 7.13
(2004). The circumstances of Young's expulsion (6) of Qualls from Hudson Place and his
unilateral decision to convert it to another use provide evidence by which the jury could
have found that Young disregarded the partnership's ownership of the subdivision and
treated it as his own property, in violation of his duties as partner and in breach of their
partnership agreement. 

 Although he asserted that Qualls and his wife were aware of the reasons for his
actions, (7) Young acknowledged at trial he did not consult with Qualls before telling him to
leave. During his testimony Young responded, "[t]hat is correct," to the question, "[b]ut it
was your . . . decision only, without any consultation or approval or involvement of [Qualls
and his wife], to kick them off the property in June of 1996 and to turn this development into
something else?" (8) Young did not criticize Qualls's work or his sales efforts. He testified,
"[T]he whole plan to begin with didn't work. It was just that simple." 

 The jury heard other testimony indicating that Young did not regard or treat Qualls
as his partner with respect to Hudson Place. (9) Young acknowledged forming two previous
partnerships with Qualls, one of them with a written partnership agreement. To a question
from Qualls's counsel asking, "And you realize that [Qualls] was a partner in this [Hudson
Place] transaction, don't you, sir?", though, Young responded, "I realize that we had an
agreement." Evidence showed that, after he and Qualls reached their agreement, when
Young received the proposed real estate contract for the purchase of the tract, he deleted
Qualls's name as a purchaser and inserted the name of a corporation Young owned. On
his attorney's advice, Young created Hudson Place, LLC, shortly before closing, for the
purpose of purchasing the property. When asked if he discussed the changes in the
identity of the purchaser with Qualls, he said, "I doubt it because I never intended for him
to be on the contract." Contrary to Young's view of their relationship reflected in these and
other similar statements, the jury found that Young and Qualls were partners.

 Pointing out the Texas Revised Partnership Act contains no provision requiring a
partner to remain in a partnership or setting a minimum term for a partnership, Young
argues his actions in June 1996 amounted to a withdrawal from the partnership. (10) He also
cites Bohatch v. Butler & Binion, 977 S.W.2d 543, 546 (Tex. 1998), for the proposition that
absent agreement for a set term, a partner has no duty to remain in a partnership or to
retain another person as partner. Bohatch is inapposite. The Supreme Court dealt there
with the expulsion of a partner pursuant to terms expressed in a written partnership
agreement among many partners, not a partnership whose very existence was disputed. 
Moreover, while Young's actions might be viewed as notice of withdrawal, see TRPA Art.
6132b-6.01(b)(1), the jury was not required to view them as such when determining
whether he breached the partnership agreement. 

 The jury heard evidence both legally and factually sufficient to support their finding
that Young breached his agreement with Qualls. His second issue is overruled.

Damages

 Under his first issue, Young argues there is no evidence or insufficient evidence to
support the jury's finding of damages. See Golden Eagle Archery, 116 S.W.3d at 761-62;
Saenz v. Fidelity & Guar. Ins. Underwriters, 925 S.W.2d 607, 614 (Tex. 1996) (appellate
courts required to conduct meaningful evidentiary review of damages awards). 

 Following the damages question, the court's charge contained an instruction that the
jury should consider, as the only element of damages, "[t]he value, if any, of the partnership
interest of Lewis Qualls."

 The parties' arguments on appeal focus on the evidence of the market value of the
Hudson Place subdivision and of the amount of the partnership's liabilities. (11) Young's
specific argument is that there is no evidence, or insufficient evidence, the market value of
the subdivision exceeded the partnership's liabilities by the amount necessary to allow the
jury to find that Qualls's half interest in the partnership had a value of $142,550. The jury
found there was a breach of the partnership agreement, but made no finding of when the
breach occurred. The parties do not disagree that, under the court's charge, the damages
finding can be supported by evidence that the subdivision's market value exceeded the
partnership's liabilities by the requisite amount either at the time of Young's 1996 expulsion
of Qualls from the subdivision or at the time of trial. Young contends there is no evidence
or insufficient evidence to support such a value for Qualls's partnership interest at either
time. 

 Each side presented the written report and opinion testimony of an expert appraiser
concerning the market value of the subdivision property. Clark Gimpel testified for Qualls,
giving his opinion that the 75 acres had a market value of $800,000 as of the May 2001
date of his report. Young presented the testimony of William Lyon, whose report and
testimony opined the market value of the property to be $325,000 as of July 1, 1996. 
Although each appraiser based his opinion of market value on both a comparative sales
approach and an income approach, Lyon valued the tract based on its use in 1996 as a
single-family residential subdivision, while Gimpel's valuation was based on its use in 2001
as a mobile home rental park. 

 Qualls contends there was evidence by which the jury could have found the property
had a value when Young expelled Qualls greater than the $325,000 value appraiser Lyons
gave it. Qualls points to a June 1995 contract for the sale of one lot in the 106-lot
subdivision for $12,995. He also relies on evidence of an arrangement with a homebuilder,
under which lots would have been valued at $15,000. The evidence also included a letter
Qualls sent Young in February 1996, proposing the sale of lots at prices ranging from
$7500 to $15,000, resulting in total receipts of $1,270,000 if all 106 lots were sold at the
proposed prices. Finally, Qualls points to a July 1996 offer that his counsel forwarded to
Young after Qualls's expulsion. The offer was signed by the proposed buyer and offered
to purchase the subdivision for $850,000. We must agree with Young that none of these
proposals provide evidence of the market value of Hudson Place. None of the proposals
were consummated. The partnership made no actual sale of any lot in the subdivision. 
Unaccepted offers to purchase or sell property are generally held not to be evidence of its
market value. See Hanks v. Gulf, Colorado & Santa Fe Ry. Co., 320 S.W.2d 333, 336-37
(Tex. 1959); Lee v. Lee, 47 S.W.3d 767, 785 (Tex.App.-Houston [1st Dist.] 2001, pet.
denied). 

 As noted, appraiser Gimpel testified to a market value of the property of $800,000. 
We see no evidence that the property had a greater market value. 

 Evidence of the amount of the partnership's indebtedness for its purchase and
development of the tract included Young's testimony that the land and development costs
at the time he told Qualls to leave was "approximately $400,000." The closing statement
showed the land cost $113,891.25. Young also testified that he borrowed funds to finance
the tract's purchase and development from his mother and from trusts that benefitted his
children. The evidence admitted included a promissory note payable to those lenders,
signed by Young on behalf of Hudson Place, LLC, and providing for advances up to
$350,000, and a deed of trust securing the note. (12) Young testified that the entire $350,000
was advanced during the course of development of the subdivision, most of it by March of
1996. 

 When questioned about Young's testimony that "approximately $400,000" had been
spent on the property, Qualls testified that costs incurred at the time he was told to leave
the property were "a little less than $400,000," remembering "about 260-something
thousand in construction," in addition to the land cost. He also said records of the amounts
spent were "on the computer." A spreadsheet kept by Pam Qualls listing expense invoices
paid by Young showed development costs totaling $276,220.46 were paid through
November 1995. 

 Qualls's testimony confirmed that, under his agreement with Young, funds invested
in the property would bear interest at 12%, the rate stated in the $350,000 note. The
evidence, including the testimony of Young and Qualls, consistently reflects that funds
invested in Hudson Place amounted at least to $390,111.71, the total of the land cost and
the development expenses recorded in the spreadsheet kept by Pam Qualls on behalf of
the partnership. We conclude a calculation of Qualls's damages, based on his asserted
theory of valuation of the partnership, that does not take into account land and
development costs totalling the amount of $390,111.71, plus interest, is so against the
overwhelming weight of the evidence as to be clearly wrong and unjust. 

 Young contends the partnership's liabilities also must include the additional funds
Young testified he spent to convert the subdivision to a mobile home park. Young placed
into evidence a promissory note, payable on demand, bearing the date July 17, 1997,
signed by him on behalf of Hudson Place, LLC, by which the company agreed to pay
Young the principal amount of $215,194.30, "or so much thereof as may be advanced and
outstanding hereunder." The note provided for interest at ten percent per annum. His
evidence also included a deed of trust on the subdivision, stating that it secured payment
of a promissory note "of even date herewith" in the principal sum of $215,194.30. The deed
of trust was signed on July 13, 1999, also by Young.

 Unlike the evidence supporting the expenditure of the funds advanced under the
$350,000 note, only Young testified to the amounts spent on Hudson Place after Qualls's
departure. No itemization like Pam Qualls's spreadsheet supported Young's testimony of
the additional expenditures. Young described in general terms the steps he undertook to
make the property suitable for use as mobile home rental spaces, which included making
improvements to the roads, installing electric lines and water and sewer taps to the spaces,
and having engineers replat the property. He testified he paid for that work, and that the
July 17, 1997 note "reflects the monies that I was putting into . . . the property to keep it
going and get it habitable. And there was enough in [the note] to take care of additional
monies that we knew would have to be put in after this date." He said not all the principal
amount of the note had been advanced by its date, but that "as far as I know," the
$215,194.30 had been completely advanced when he signed the deed of trust in July
1999. (13) 

 The testimony of an interested witness like Young, even if uncontradicted, does no
more than raise an issue of fact to be determined by the jury unless that testimony is clear,
direct and positive, and there are no circumstances in evidence tending to discredit or
impeach the testimony. See McGalliard v. Kuhlmann, 722 S.W.2d 694, 697 (Tex. 1986). 
Young's testimony of the amounts he spent after Qualls left the property was not clear,
direct and positive. The jury was not required to give it credence when determining the
partnership's liabilities. 

 Summarized, as of the time of trial, (14) the evidence supports a market value of no
more than $800,000 for Hudson Place, and liabilities of no less than $690,497, consisting
of the $390,111.71 invested in the property and interest on that amount from June 1996 to
November 2002 of $300,386. Under Qualls's damages theory, then, his damages
supported by the record did not exceed $54,751.50. The jury awarded $142,550. We
sustain Young's first issue.

Attorney's Fees

 We next address whether the court erred in awarding attorney's fees. Young argues
that Qualls in essence asserted against him claims for breach of the statutorily imposed
duties of loyalty and good faith under the TRPA, and attorney's fees are not recoverable
for breach of such duties. We disagree with the argument. Qualls sought to recover
attorney's fees under Civil Practice and Remedies Code Section 38.001, which provides
for the recovery of attorney's fees for a claim on an oral or written contract. Tex. Civ. Prac.
& Rem. Code Ann. § 38.001(8) (Vernon 1997). Recovery of attorney's fees is proper in an
action founded on an oral or written partnership agreement. See Atterbury, 871 S.W.2d
at 828. The jury here was asked initially to determine whether a partnership agreement
existed between Qualls and Young, and in broad fashion then asked to determine whether
the agreement was breached. As submitted to the jury, Qualls's suit was one founded on
an oral partnership agreement. See also Long v. Lopez, 115 S.W.3d 221, 228
(Tex.App.-Fort Worth 2003, no pet.) (permitting attorney's fees pursuant to Section
38.001(8) in suit against partner to enforce right under TRPA Art. 6132b-4.01(c)). The
court did not err in awarding Qualls attorney's fees. Young's third issue is overruled. 

Prejudgment Interest

 Young's fourth issue contends the trial court erred in awarding prejudgment interest. 
The trial court awarded Qualls prejudgment interest from the date he filed suit through the
date of judgment. Qualls based his request for prejudgment interest on Johnson & Higgins
v. Kenneco Energy, Inc., 962 S.W.2d 507 (Tex. 1998). (15) Prejudgment interest fully
compensates the plaintiff by providing additional damages for lost use of the money due
as damages during the lapse of time between the accrual of the claim and the date of
judgment. See Id. at 528; Miga v. Jensen, 25 S.W.3d 370, 381 (Tex.App.-Fort Worth
2000, rev'd on other grounds, 96 S.W.3d 207 (Tex. 2002). An award of prejudgment
interest can lead to an impermissible double recovery. See City of Houston v. Texan Land
& Cattle Co., 138 S.W.3d 382, 391 (Tex.App.-Houston [14th Dist.] 2004, no pet.). See also
Miga, 25 S.W.3d at 381 (award of prejudgment interest inequitable under circumstances). (16) 
We review the award of prejudgment interest under an abuse of discretion standard. 
Beacon Nat'l Ins. Co. v. Glaze, 114 S.W.3d 1, 5 (Tex.App.-Tyler 2003, pet. denied).

 Young contends that whether prejudgment interest is recoverable depends on
whether the evidence supports the jury's award of damages based on the value of Qualls's
partnership interest as of the time of his expulsion from Hudson Place in 1996. If the jury's
damages verdict is not supported by evidence of the property's value in 1996, Young
argues, but is supported only by evidence of the property's appreciated value at the time
of trial, an award of prejudgment interest on the appreciated value would constitute a
double recovery. 

 Although we have concluded, in our disposition of Young's first issue, that the jury's
award of damages to Qualls in the amount of the value of his partnership interest cannot
be supported based on the value of the Hudson Place property at the time of his 1996
exclusion, we do not agree that the award of prejudgment interest duplicated the damages
awarded. Young's argument might be persuasive if prejudgment interest commenced in
1996. It commenced, though, pursuant to Johnson & Higgins, 962 S.W.2d at 531, on the
date suit was filed, in December 1998. The record does not reflect the value of the
property at that time. Barbara Unsel testified that the first mobile home lots were rented
in March or April 1997, so the property was by then being utilized for the use for which
Clark Gimpel appraised it. The trial court did not abuse its discretion by awarding
prejudgment interest from the date of suit. Young's fourth issue is overruled.


Conclusion

 If we find that part of a damages verdict lacks sufficient evidentiary support, our
proper course is to suggest a remittitur of that part of the verdict. Larson v. Cactus Utility
Co., 730 S.W.2d 640, 641 (Tex. 1987); Pope v. Moore, 711 S.W.2d 622, 624 (Tex. 1987);
Tex. R. App. P. 46.3. Accordingly, we suggest a remittitur of $87,798.50, the difference
between the $142,550 jury award and the $54,751.50 we have found supported by the
evidence. If, within 20 days of the date of this opinion, Qualls makes a remittitur of that
amount, our judgment reforming the trial court's judgment to reduce Qualls's damages to
the sum of $54,751.50 and affirming the judgment as reformed will issue. Otherwise, we
will reverse the trial court's judgment and remand the cause for a new trial. Larson, 730
S.W.2d at 641. 

 

 James T. Campbell

 Justice



1. Former Chief Justice Phil Johnson was on the panel that heard oral argument. He
did not participate in the decision. Tex. R. App. P. 41.1(b).
2. The requests for injunctive relief and appointment of a receiver were not presented
at trial.
3. Young testified: "[Qualls] approached me about this property and about doing the
subdivision, and I said that I would be willing to do it on the basis that we would split the
profit if he would do the supervision and get it done and I would provide the money." Young
also testified that Qualls and his wife "were supposed to handle the marketing." 
4. See Tex. Rev. Civ. Stat. Art. 6132b-4.04 and 6132b-8.02 (Vernon Supp. 2004). 
Tex. Rev. Civ. Stat. Art. 6132b-1.01 et seq. constitute the Texas Revised Partnership Act. 
Further references to the Act will be cited "TRPA Art. 6132b-____." 
5. At trial, Young initially took the position the property was not a partnership asset,
but its status as such is not disputed on appeal. See TRPA Art. 6132b-2.05 and comment
following that article.
6. Young does not deny on appeal that the evidence showed he expelled Qualls from
Hudson Place. Qualls apparently did not return to Hudson Place or have any further role
in its operation.
7. Young testified: "[T]hey had known for a long, long time that this project was in big
trouble; and they were fully aware of it and had been aware of it for an extended period of
time. And I waited way too long to take the measures that I took."
8. Young also agreed with his counsel's description of the events: "[Y]ou turned off
the lights, turned off the phone, and basically said, 'Get your stuff and get off my property.'"
9. Young's pleadings specifically denied the existence of a partnership with Qualls.
10. Qualls contends on appeal that the partnership was one for a particular
undertaking, and that Young's actions, if considered a withdrawal, still were wrongful under
TRPA Art. 6132b-6.02. We do not reach Qualls's contention.
11. The jury was not instructed concerning a definition of the "value" of Qualls's
partnership interest. Nor was any direct evidence of the market value (or the value by any
other measure) of an interest in the partnership offered. Qualls was not asked, for
instance, his opinion of the value of his interest in the partnership. Cf. Atterbury v. Brison,
871 S.W.2d 824, 828 (Tex.App.-Texarkana 1994, writ denied) (citing partner's testimony
concerning market value of his partnership interest). The case was presented at trial on the
theory that the value of Qualls's 50% interest equalled half of the difference between the
market value of the Hudson Place subdivision and the partnership's liabilities. We do not
understand that theory to be questioned on appeal, and we assume its correctness for
purposes of our review. Cf. American Mut. Liability Ins. v. Parker, 144 Tex. 453, 191
S.W.2d 844, 848 (1945) (appeals court should not decide a case on a theory different from
that on which it was pled and tried). 
12. The deed of trust was dated June 30, 1995, "effective" November 17, 1994, but
was signed on March 20, 1996. It was payable on demand and by November 24, 1996 in
the absence of demand. The deed conveying the 75-acre tract to Hudson Place, LLC, is
dated November 16, 1994.
13. Young testified his wife determined the amount of the note and would have better
information about the advancements of funds, but Mrs. Young did not testify. Barbara
Unsel, who managed Hudson Place for Young beginning in July 1996, testified that Young
paid her husband and others for work at the mobile home rental park, but she did not
quantify the amounts paid.
14. Neither party contends the market value of the property varied materially between
the date of Gimpel's appraisal and the date of trial. Young's brief notes Gimpel's opinion
that the value of the property was generally increasing at the time of his appraisal in 2001. 
 
15. In their discussions of this issue on appeal, both Qualls and Young analogize to
provisions of the TRPA but neither contends any statutory provision directly applies. 
16. But cf. CTTI Priesmeyer, Inc. v. K. & O. Ltd. Partnership, 164 S.W.3d 675, 683-84
(Tex.App.-Austin 2005, no pet.) (discussing application of "one satisfaction rule" to contract
claims).


n>          As for partnership liability, the evidence is not identified but from appellants’
argument we deduce it is the testimonial affirmation of Traphagan that Calk, Foutz,
Johnson, and unnamed others did not pay assessments. Appellants contend this
conclusion is borne out by two voluminous exhibits consisting of copies of billing
statements to members of Star Cab. Although appellants do not direct us to specific
statements in the exhibits, we examined the statements and find they show nothing more
than appellants and appellees were variously in arrears in payment of assessments. This
fact was shown by the trial testimony. 
          Regardless of the fiduciary duty alleged, evidence of the substance and quantum
relied on by appellants amounts to no evidence of a breach of fiduciary duty. Issue two is
overruled.
          In their third issue, appellants assert the trial court erred in directing a verdict against
them on their DTPA claims against Johnson, Foutz, Chavira, Calk, and All Taxi.   Without
citing the DTPA subsection or subsections on which they rely, appellants claim appellees
misrepresented that the cost of All Taxi dispatch services would be identical to the amount
charged by its predecessor and the cost of All Taxi’s service would be reduced because
the company expected five initial subscribers of its service. According to appellants, only
two companies initially subscribed. Appellants also claim appellees engaged in
unconscionable conduct


 because officers of All Taxi did not pay all the fees required of
Star Cab members.



          Appellees challenge appellants’ claimed status as DTPA consumers. Standing to
sue under the DTPA requires the plaintiff qualify as a “consumer.” Flenniken v. Longview
Bank and Trust Co., 661 S.W.2d 705, 706 (Tex. 1983). A DTPA consumer is one who: (1)
seeks or acquires goods or services by purchase or lease; and (2) the goods or services
sought or acquired form the basis of his or her complaint. Melody Home Mfg. Co. v.
Barnes, 741 S.W.2d 349, 351-52 (Tex. 1987); Sherman Simon Enters., Inc. v. Lorac Serv.
Corp., 724 S.W.2d 13, 15 (Tex. 1987). Ordinarily, consumer status is a question of law for
the court. Lukasik v. San Antonio Blue Haven Pools, Inc., 21 S.W.3d 394, 401
(Tex.App.–San Antonio 2000, no pet.).
          Appellants claim they were consumers because they “were attempting to purchase
stock in All Taxi.” But the corporate stock appellants sought in All Taxi is not a “good” for
attaining DTPA consumer status. See Hendricks v. Grant Thornton Int’l, 973 S.W.2d 348,
356-57 (Tex.App.–Beaumont 1998, pet. denied).
          Even assuming arguendo appellants were consumers of All Taxi, they do not direct
us to any record evidence of their detrimental reliance on a representation


 by an
appellee, unconscionable conduct


 perpetrated by an appellee, or that a DTPA violation
was a producing cause of any injury.


 
          The trial court did not err in directing a verdict against appellants on their DTPA
claims. Issue three is overruled.
          In their fourth issue, appellants complain the trial court erred in directing a verdict
against them on their requests for a declaratory judgment


 that Star Cab did not provide
sufficient notice of intent to expel appellants from the cooperative under the terms of its by-laws, and at the time appellants were expelled most of the Star Cab members were on
suspended status for non-payment of association financial obligations. 
          In short, appellants’ complaint concerns the trial court’s refusal to make declarations
of facts supporting their claim of wrongful expulsion from Star Cab. Proof of such facts
would potentially be germane to appellants’ theories of breach of fiduciary duty and duress.
Moreover, by seeking a declaratory judgment of various elements of their tort claims,
appellants pave the way for an award of attorney’s fees on theories not otherwise
authorizing such a recovery. But this type of end run is contrary to the purposes of the
UDJA and impermissible. See City of Laredo v. South Texas Nat’l Bank, 775 S.W.2d 729,
732 (Tex.App.–San Antonio 1989, writ denied) (party to existing suit may not seek a
declaratory judgment to recover attorney’s fees not otherwise authorized by law); cf. BHP
Petroleum Co. v. Millard, 800 S.W.2d 838, 841 (Tex. 1990) (the UDJA is “‘not available to
settle disputes already pending before a court.’”) (quoting Heritage Life v. Heritage Group
Holding, 751 S.W.2d 229, 235 (Tex.App.–Dallas 1988, writ denied)). The trial court did not
err in directing a verdict against appellants on their claim for declaratory relief. Issue four
is overruled.
          In the fifth issue, Traphagan asserts the trial court erred in directing a verdict against
her on a claim of “insurance fraud.”


 According to Traphagan, Johnson was not only a cab
driver but an insurance agent and in the latter capacity defrauded her by not placing
comprehensive coverage on her cab even though he accepted her premiums and supplied
a proof of insurance card. Traphagan tendered two checks to Johnson, payable to Star
Cab, totaling $825.71 which she believed paid the premium for one year’s comprehensive
insurance coverage on her cab. According to Traphagan, during the first year to year-and
-a-half of Star Cab’s existence, members of the association were named insureds on a
motor vehicle liability policy. Traphagan agreed her vehicle had liability insurance
coverage the entire time she was a member of Star Cab. Johnson testified he was not a
licensed insurance agent but as president of Star Cab sought fleet insurance for the
cooperative. According to Johnson, the money Traphagan testified she tendered for
insurance was a down payment for her share of the fleet insurance premium. The
insurance card he provided Traphagan was issued by Star Cab’s liability insurance carrier
for drivers to carry as proof of coverage. 
          The elements of a cause of action for fraud are: “‘(1) that a material representation
was made; (2) the representation was false; (3) when the representation was made, the
speaker knew it was false or made it recklessly without any knowledge of the truth and as
a positive assertion; (4) the speaker made the representation with the intent that the other
party should act upon it; (5) the party acted in reliance on the representation; and (6) the
party thereby suffered injury.’” Johnson v. Brewer & Pritchard, P.C., 73 S.W.3d 193, 211
n.45 (Tex. 2002) (quoting In re FirstMerit Bank, N.A., 52 S.W.3d 749, 758 (Tex. 2001));
See State Bar of Texas, Texas Pattern Jury Charges–Business, Consumer, Insurance, and
Employment, PJC 105.2 & cmt. (2006). There is no evidence that Johnson defrauded
Traphagan in the purchase of a comprehensive motor vehicle policy. Issue five is
overruled.
          In their ninth issue, appellants argue the trial court erred by dismissing their
shareholders’ derivative suit on behalf of Star Cab for failure to state a cause of action.
Appellants plead a derivative action against officers and directors of Star Cab alleging
claims of beach of fiduciary duty, fraud, DTPA violations, and extortion. As authority for
standing to bring a derivative claim, appellants rely on article 5.14 of the Business
Corporation Act. Tex. Bus. Corp. Act Ann. art. 5.14 (Vernon 2003). Article 5.14 provides
for a shareholders’ derivative action on behalf of a for-profit corporation. But it is not
applicable to Star Cab. See Tex. Bus. Corp. Act Ann. art. 9.14(A) (Vernon 2003)
(stipulating corporations to which Business Corporation Act applies). Star Cab is an
association created under the Texas Cooperative Association Act, Tex. Rev. Civ. Stats.
Ann. art. 1396-50.01 (Vernon 2003) (TCAA). An association incorporated under the TCAA
is subject to the provisions of the Texas Non-Profit Corporation Act to the extent they do
not conflict with the TCAA. Tex. Rev. Civ. Stats. Ann. art. 1396-50.01 § 3 (Vernon 2003). 
Because it is thus governed by the Texas Non-Profit Corporation Act, the Business
Corporation Act does not apply to Star Cab. 
          The Texas Non-Profit Corporation Act does not contain a provision like Business
Corporation Act article 5.14, authorizing a derivative action. Appellants recognize this void
but argue a members’ derivative action nevertheless was available to them. In support,
they cite Mitchell v. LaFlame, 60 S.W.3d 123 (Tex.App.–Houston [14th Dist.] 2000, no pet.)
and Governing Board of the DAR v. Pannill, 561 S.W.2d 517 (Tex.Civ.App.–Texarkana
1977, writ ref’d n.r.e.). We do not find these cases dispositive of the question. 
          At issue in Mitchell, 60 S.W.3d at 127, was whether owners of townhomes could
individually sue a non-profit homeowners’ association for damages to corporately owned
common areas. Affirming a judgment notwithstanding the verdict that limited the owners’
recovery to damage to their individually owned property, the court found the owners should
have brought a representative suit on behalf of the corporation for damage to corporate
property. Id. at 129. As the question was not before it, the court did not decide whether
members of a Texas non-profit corporation may bring a derivative action on behalf of the
corporation. 
          Among the issues in Pannill, 561 S.W.2d 517, was the availability of an ultra vires
claim by members of a non-profit corporation suing in a representative capacity to enjoin
the transfer of real property by a corporate officer. Id. The court was not presented with
the question, nor did it decide, whether members of a non-profit corporation may sue
derivatively for the benefit of the corporation.
          Appellants further argue we should fashion a remedy. Under these facts, and in the
absence of statutory authorization for derivative actions under the Non-Profit Corporation
Act, we decline their invitation. See Historical and Statutory Notes, Tex. Rev. Civ. Stat.
Ann. art. 1396-1.10 (Vernon 2003) (quoting Non-Profit Corporation Act as, inter alia, “[a]n
Act to adopt and establish general statutory provisions applicable to non-profit corporations
. . . .”). Issue nine is overruled.
Award of Attorney’s Fees as a Sanction



          We apply an abuse of discretion standard in reviewing an order of sanctions. Cire
v. Cummings, 134 S.W.3d 835, 838 (Tex. 2004). We will reverse the trial court's ruling
only if the trial court acted without reference to any guiding rules and principles, such that
its ruling was arbitrary or unreasonable. Low v. Henry, 221 S.W.3d 609, 614 (Tex. 2007). 
Sanctions function to compensate, punish, or deter. See TransAmerican Natural Gas
Corp. v. Powell, 811 S.W.2d 913, 922 (Tex. 1991) (Gonzalez, J., concurring). However,
all sanctions granted must be “just.” Butan Valle, N.V. v. Smith, 921 S.W.2d 822, 827
(Tex.App.–Houston [14th Dist.] 1996, no writ). Justness requires a direct relationship
between the offensive conduct and the sanction imposed and the sanction must not be
excessive. TransAmerican, 811 S.W.2d at 917. 
          In their sixth issue, appellants and Kirschberg argue that appellees should have
segregated attorney’s fees attributable to the defense of frivolous claims alleged in the
pleadings from attorney’s fees attributable to the defense of meritorious claims. A
complaint on appeal that a party seeking attorney’s fees failed to segregate fees among
specific claims requires a timely and specific objection in the trial court; otherwise, the
complaint is waived. Green Int’l v. Solis, 951 S.W.2d 384, 389 (Tex. 1997); see Tex. R.
App. P. 33.1(a)(1)(2). Appellants do not provide a record citation to, nor do we find, a
timely objection in the trial court calling its attention to the argument appellants now urge
in this court. In the absence of an objection and ruling, nothing is preserved for our review. 
Issue six is overruled.
          In their seventh issue, appellants and Kirschberg argue that attorney’s fees awarded
appellees as a sanction should have been segregated to exclude expenses for defense
incurred while the live petition was signed by their former attorney. Appellants filed a
motion in the trial court to apportion attorney’s fees with their former attorney. We have
located this motion in the clerk’s record and find it sufficient to call appellants’ complaint
to the attention of the trial court. Tex. R. App. P. 33.1(a)(1)(A),(B). The record does not
indicate the court expressly ruled on the motion although we find its detailed order granting
the full amount of attorney’s fees requested by appellees sufficiently indicates it overruled
the motion for apportionment of attorney’s fees by implication. Tex. R. App. P.
33.1(a)(2)(A). 
          Under Rule 13, when the trial court finds a pleading is groundless and brought in
bad faith or groundless and brought for the purpose of harassment, it shall impose an
appropriate sanction available under Rule 215(2) (b). See Tex. R. Civ. P. 13 & 215(2)(b). 
The trial court possesses authority under Rule 215(2)(b) to “make such orders . . . as are
just.” See Tex. R. Civ. P. 215(2)(b). One sanction expressly available to a trial court under
the rule is an award of “reasonable expenses, including attorney fees.” Tex. R. Civ. P.
215(2)(b)(8). The rule does not expressly cap or limit the amount of attorney’s fees
awarded to the exact amount of fees incurred by the movant for sanctions. Falk &
Mayfield, L.L.P. v. Motzan, 974 S.W.2d 821, 823 (Tex.App.–Houston [14th Dist.] 1998, pet.
denied). Moreover, the sanctions listed in Rule 215(2)(b) are inclusive, not exclusive. Tex.
R. Civ. P. 215(2)(b); Falk, 974 S.W.2d at 823. Thus, in Falk the court of appeals found a
sanction of three times the actual amount of attorney’s fees within the trial court’s
discretion when the appellants’ allegation of defamation was absolutely protected speech,
appellants refused appellees’ offer to dismiss in lieu of sanctions, and evidence showed
the attorney appellants previously filed other frivolous suits. Falk, 974 S.W.2d at 823-25. 
          Here following evidentiary hearings the trial court made an order on appellees’
motions for sanctions that included the following findings:
The court finds that good cause exists to impose sanctions pursuant to Tex.
R. Civ. P. 13.
 
The court finds that the First and Second Amended Original Petition (sic)
were presented for an improper purpose.
 
[Appellants’ attorneys] did not make a reasonable inquiry into the legal and
factual basis of the case prior to signing the First and Second Amended
Original Petitions.
 
The court finds that the pleading was presented to increase the cost of
litigation and to harass the Defendants.
 
The court finds that not all of the allegations or other factual contentions in
the First and Second Amended Original Petition had evidentiary support at
the time of the signing. 
 
After reviewing the facts available to Plaintiff and their counsel and the
circumstances existing when the pleading was filed, the Court finds that the
signing of the First and Second Amended Original Petitions violate Tex. R.
Civ. P. 13.
          The clerk’s record reveals that virtually all the activity in the case occurred following
the appearance of Kirschberg. For example, the clerk’s record exceeds 1,100 pages and
only 54 pages of that record temporally precede the pleading through which Kirschberg
made their initial appearance in the case. Exclusive of voir dire, the case required nine
days to try with some of appellants’ theories resolved by directed verdict while the
remainder were decided adversely for appellants by the jury. Under the facts at bar, we
cannot say that the trial court’s award of attorney’s fees as a sanction against appellants
for violating Rule 13 was an abuse of discretion even if the amount awarded included an
amount equal to attorney’s fees incurred by appellees between the filing of appellants’
original petition and their first amended original petition. Issue seven is overruled.
          In their eighth issue, appellants and Kirschberg argue the trial court erred in ordering
appellants pay appellees’ attorney’s fees absent a finding that appellants, as clients of
Kirschberg, were culpable of wrongful conduct. Again appellants cite no record references
or controlling legal authority for their contention. 
          In their argument, appellants and Kirschberg regard the portion of the judgment
requiring appellants pay appellees’ attorney’s fees as a sanction. They do not consider
that appellants sought relief under the UDJA and under the act the court awarded
appellees’ attorney’s fees. Attorney’s fees are available under section 37.009 of the UDJA
not as a sanction but as an award within the court’s discretion. See Oake v. Collin County,
692 S.W.2d 454, 455 (Tex. 1985) (grant of attorney’s fees under section 37.009 within the
trial court’s discretion). Thus, to obtain attorney’s fees under section 37.009 a showing of
the culpability of an adverse party is unnecessary. Rather, the section authorizes the court
to award costs and reasonable and necessary attorney’s fees as are equitable and just. 
Tex. Civ. Prac. & Rem. Code Ann. § 37.009 (Vernon 2008). Moreover, the court may
award either party attorney’s fees regardless of which party sought affirmative relief. Save
Our Springs Alliance, Inc. v. Lazy Nine Mun. Util. Dist., 198 S.W.3d 300, 318-19
(Tex.App.–Texarkana 2006, pet. denied); GeoChem Tech. Corp. v. Verseckes, 929
S.W.2d 85, 91-92 (Tex.App.–Eastland 1996), rev'd on other grounds, 962 S.W.2d 541
(Tex. 1998) (when plaintiff’s lawsuit included a claim for declaratory relief, trial court did not
abuse its discretion in awarding attorney’s fees under section 37.009 to defendants after
rendering judgment in their favor). 
          Here the court expressly found appellees should “recover reasonable attorney’s fees
pursuant to Tex. Civ. Prac. & Rem. Code § 37.009.” The court also found that the fees
sought by appellees were “reasonable and necessary.” The trial court did not err in
awarding appellees attorney’s fees according to section 37.009. Issue eight is overruled.
            In their tenth issue, appellants and Kirschberg claim the trial court erred in finding
their allegation that funds were improperly transferred was likely without evidentiary support
at the time their first and second amended original petitions were signed. Appellants do
not support their argument with citations to the record or authorities nor do they
demonstrate how the claimed error was harmful. Tex. R. App. P. 44.1(a)(1). They do,
however, refer us to their prior argument that because start-up funds for All Taxi came from
Star Cab and members of Star Cab did not receive share certificates in All Taxi it is
possible All Taxi was owned by the appellee officers of Star Cab. And, according to
appellants, it would be a misappropriation of funds if the directors of Star Cab wholly
owned All Taxi. These statements, representing the sum and substance of appellants’
claim at the time of trial, amount to no more than surmise and speculation of the alleged
tortious conduct. Appellants’ misappropriation claim lacked evidentiary support at the time
of trial and nothing in the record shows us it possessed any greater merit at the time the
pleading so alleging was signed. The trial court did not abuse its discretion in finding a
want of evidence when the pleading was signed. Issue ten is overruled.
          In their eleventh issue, appellants and Kirschberg argue the trial court erred in
finding appellants’ first and second amended petitions were groundless as defined by Tex.
R. Civ. P. 13. “Groundless” under Rule 13 means “no basis in law or fact and not
warranted by good faith argument for the extension, modification, or reversal of existing
law.” Tex. R. Civ. P. 13. To determine if a pleading is groundless, the trial court employs
an objective analysis; that is, whether the party and counsel made a reasonable inquiry into
the legal and factual basis of the claim. In re United Servs. Auto Ass'n, 76 S.W.3d 112,
115 (Tex.App.–San Antonio 2002, orig. proceeding). In so doing, the court looks to the
facts available to the litigant and the circumstances at the time the suit was filed. Id. 
          Appellants and Kirschberg again do not cite the portions of the record they believe
support the claimed error nor do they provide an analysis showing how the alleged error
probably resulted in an improper order of sanctions. Importantly, appellants and
Kirschberg do not assail findings of the trial court which included: appellants’ pleadings
were presented for an improper purpose, a reasonable opportunity to investigate existed
before the pleadings were filed, appellants’ counsel did not reasonably inquire of the
relevant facts and law before signing the pleadings, the pleadings were filed to increase
costs and for harassment, not all counts in the pleadings likely had evidentiary support
when signed, counts in the pleadings pertaining to causes of action for misappropriation
of funds, insurance fraud, the DTPA, extortion, and usurpation of corporate opportunity did
not likely have evidentiary support when filed, and based on the trial court’s review of the
facts known to appellants and their counsel at the time the pleadings were filed counsel
signed the pleadings in violation of Rule 13. These findings sufficiently support the trial
court’s discretionary determination that good cause existed for imposition of sanctions
under Rule 13. Issue eleven is overruled.
Conclusion 
          Having overruled all issues presented by appellants and Kirschberg, we affirm the
judgment of the trial court.
 
                                                                          James T. Campbell

 Justice